CANTWELL et al. v. CRAWLEY et al., Appellants.

Division Two, March 30, 1905.

1. **ENFORCING A TRUST. Dependent Provisions: Divisibility.** Where the material provisions of a trust agreement reciting that the title-owner of two separate tracts of land holds them in trust for himself and others, are common with and dependent on each other, the agreement is an entirety, and cannot be enforced in equity by piecemeal; but if the contract is divisible and contains separable provisions, not dependent on each other, they can be separately enforced.

2. ———: ———: ———: **Tracts of Land: Interests of Parties.** Where the trust agreement refers to two tracts of land, and the interests of the parties in the one are not dependent on their interests in the other, and the parties did not by the agreement

intend that they should be, and it does not appear from the agreement that they would not have made it unless it embraced both tracts, or that both tracts were the essence of the contract, it is a severable contract and may be separately enforced.

3. ————: ————: ————: ————: **Purchased and Unpurchased.** For an expressed consideration of one dollar and "with funds furnished in equal parts" by the parties, the defendant acknowledged himself to "hold in trust" for two others a two-thirds interest in two tracts of land, one being north of a named road "to be acquired" by him, and the other lying south of the road and "hereby conveyed," having already been acquired by defendant. *Held,* that the agreement was severable, and could be enforced as to the latter tract in a court of equity, and on a suit to enforce it the land could be partitioned.

4. ————: **Trust Agreement: Executory: Prospective Purchase: Statute of Uses.** A trust agreement in which the maker acknowledges himself to hold land thereafter to be purchased in trust for himself and other named persons, is executory, and usually a court of equity will refuse to enforce such a contract; but if the agreement created a mere naked use, and there was nothing further for him to do, the Statute of Uses at once executed it.

5. ————: **Laches.** Mere lapse of time short of the period fixed by the Statute of Limitations, will not bar a claim to equitable relief, when the right is clear and there are no countervailing circumstances. And where the suit is to enforce an agreement in which one of the parties acknowledges that he holds two-thirds of the land in trust for plaintiffs, and that agreement is of record, and after its record defendants buy it from the trustee, and the land is wild and defendants made no improvements except to build a small house thereon to put corn in, and were not induced by plaintiffs to change their position, the suit is not barred by laches, nor by limitations if brought within the period fixed by statute.

6. ————: **Limitations.** In a suit to enforce a trust agreement against purchasers from one of the parties who acknowledged that he held the land in trust for plaintiffs, the Statute of Limitations does not begin to run on the making of the agreement, but when the trustee sold the land to defendants.

Appeal from St. Francois Circuit Court.—*Hon. James D. Fox,* Judge.

AFFIRMED.

*M. R. Smith* for appellants.

(1) An indefinite trust agreement affecting two distinct tracts of land, founded upon a consideration dependent upon the entire performance of the contract, is not divisible, but is an entire contract and cannot be enforced in equity in piecemeal. Hill v. Coal Co., 119 Mo. 27; 7 Am. and Eng. Ency. Law (2 Ed.), 95; Merriam v. Norman, 9 Heisk. (Tenn.) 269; 1 Beach on Mod. Contracts, sec. 731; More v. Bennett, 40 Cal. 251. The reason seems to be that, as the contract is founded upon a consideration dependent upon the entire performance of the act, if from any cause it is not wholly performed, the *casus foederis* does not arise, and the law will not make provision for exigencies which the parties have neglected to provide for themselves. Story's Equity Jurisprudence, sec. 470; 7 Am. and Eng. Ency. Law (2 Ed.), 97. (2) The so-called trust agreement was declared upon terms and conditions specified in a contract made prior thereto. The instrument is incomplete as to when the trust imposed shall be discharged, as to the consideration upon which it was founded, and as to whether any "rights and interest" had been or were to be acquired in the tracts of land described therein, and as to the purpose of the trust. The contract is within the Statute of Frauds and is executory. Kelly v. Thuey, 143 Mo. 436. (a) The answers are sufficient. Hillman v. Allen, 145 Mo. 643. (b) In cases of specific performance: Springer v. Kleinsorge, 83 Mo. 152. (c) As to the trust agreement being executory: 2 Black., Com., 443; McDonald v. Hewett, 15 Johns. (N. Y.) 340; Hill v. Coal Co., supra. The instrument under consideration can only be a declaration of an executory trust. Gaylord v. Lafayette, 115 Ind. 429; Bisph. on Eq. (2 Ed.), 31; Sime v. Howard, 4 Nev. 484; Pitts v. Weakley, 155 Mo. 135. (3) The so-called trust agreement was made in

October, 1888. Suit was brought to discharge the trust December 12, 1899, more than eleven years after the instrument was made, and more than ten years after it was filed, and more than eleven years after Crawley got title of Williams, and almost nine years after the Shannons got title of Crawley, and after eight years of actual possession by the Shannons. Is this, or not, laches? Bliss v. Prichard, 67 Mo. 187; Hatcher v. Hatcher, 139 Mo. 626; Kroening v. Goehri, 112 · Mo. 641; Kelley v. Hurt, 74 Mo. 565; Brown v. Massey, 138 Mo. 532; Davis v. Petty, 147 Mo. 385. (a) Plaintiffs never sought possession of land. Taylor v. Von Schrader, 107 Mo. 228. (b) The question of consideration is in doubt. Davis v. Petty, 147 Mo. 383. · (c) When Crawley sold the land and gave a warranty deed and received $1,000 therefor, and plaintiffs received notice of such sale, the day for action had arrived. Mastin v. Grimes, 88 Mo. 488; Frink v. Thomas, 12 L. R. A. 243; In re Ferguson's Estate, 124 Mo. 584. (d) Without specializing the facts and circumstances, the relative position of the parties have changed to the prejudice of defendants. Newman v. Newman, 152 Mo. 415; Frink v. Thomas, 12 L. R. A. 239. (4) The trust agreement was never intended by the parties to it to affect any interests except interests acquired by Crawley for the three, in options; they were acting jointly in taking options and prospecting for lead. (5) The strict execution of option contracts, the law does not favor, especially unless diligence is used. Litz v. Goosling, 21 L. R. A. 127; Smith v. Wilson, 160 Mo. 165.

*Merrifield W. Huff* for respondents.

(1) As a general rule statutes of limitations apply equally to legal and equitable actions. Kelly v. Hunt, 61 Mo. 463, 74 Mo. 561; Bradshaw v. Yates, 67 Mo. 221; Real Estate Co. v. Lindell, 142 Mo. 79. · (2) In those cases in which equity departs from this rule and ap-

plies the doctrine of laches, the party in whose favor the departure is made must show that the delay has injured him, or that the party causing the delay owed him some duty. Mere delay is not sufficient. Condit v. Maxwell, 142 Mo. 266; Safe Deposit Co. v. Kennett, 101 Mo. App. 397; Lasher v. McCreary, 66 Fed. 834. (3) This was in no sense an executory trust; on the contrary, the Statute of Uses executed the trust immediately it was made, and the grantees took the legal title. R. S. 1899, sec. 4589; Pugh v. Hays, 113 Mo. 431; Roberts v. Mosely, 51 Mo. 282; Cornwell v. Wulff, 148 Mo. 556; Speed v. Railroad, 163 Mo. 129.

BURGESS, P. J.—This suit was instituted in the circuit court of St. Francois county on the 12th day of December, 1899. The petition is in two counts. The first count is for the purpose of setting aside a conveyance by defendant Crawley to his codefendants as to a two-thirds interest in the land in the petition described, and that the title to said two-thirds interest in said land be divested out of the defendants James H. Shannon, John C. Shannon, C. W. Shannon and I. N. Shannon and vested in the plaintiffs. The second count is for partition of the land in accordance with their respective rights as set forth therein.

The trial court rendered a decree vesting title to the undivided two-thirds of the land in controversy in plaintiffs and rendered judgment in favor of its partition as prayed for.

In due time the defendants, except Samuel L. Crawley, filed motions for new trial and in arrest, which being overruled they saved their exceptions, and bring the case to this court by appeal for review. The contract is as follows:

"This instrument of writing made this — day of October, A. D. 1888, witnesseth, That I, Samuel Crawley, of the county of St. Francois and State of Missouri, in consideration of the sum of one dollar to

me in hand paid by James H. Bethune and H. J. Cantwell, the receipt of which is hereby acknowledged, do hold in trust for the said Bethune and Cantwell two undivided third interests in all rights and interest acquired or to be acquired by me under and by virtue of an agreement by George M. Williams to convey to me, the said Crawley, all of that part of the northeast quarter and a strip off the northeast side of the northwest quarter of section eight, township thirty-six, range five east, lying on the north side of the county road leading from Farmington in St. Francois county, to Potosi in Washington county, Missouri, upon the terms and conditions therein specified, also two undivided thirds of that part of the south half of the northeast quarter and the southeast quarter of the northeast quarter in section eight, township thirty-six north, of range five east, lying south of the county road leading from Farmington to Potosi, and east of the tract of land in said northwest quarter of section eight, as aforesaid, and conveyed by Wm. R. Taylor and wife to J. H. and C. W. Shannon, the land hereby conveyed containing by estimation, seven and a half acres more or less.

"All the above lands, rights and interests were purchased by me, the said Crawley, with funds furnished in equal parts by me, Cantwell and Bethune.

"In witness whereof, I have hereunto signed my name and affixed my seal this 1st day of November, 1888.                    "SAM CRAWLEY.      (Seal.)"

The trial court found the facts to be as follows:

"The court finds as a fact in the above entitled cause that on the — day of October, 1888, Samuel L. Crawley, for a valuable consideration to him paid by James H. Bethune and H. J. Cantwell, the original plaintiffs in this case, executed an instrument by which he agreed with the said parties that two undivided third parts of all the rights and interests acquired or

to be acquired by him in and to a tract of land containing about seven and one-half acres, which is described in the petition in said instrument, was to belong to the said Bethune and Cantwell; that in said instrument said seven and one-half acres was described as follows: 'That part of the south half of the northeast quarter and the southeast quarter of the northwest quarter in section 8, township 36 north, of range 5 east, lying south of the county road leading from Farmington to Potosi, and east of the tract of land in said northwest quarter of section 8, aforesaid, conveyed by W. R. Taylor and wife to J. H. and C. W. Shannon.' That said instrument by which said Crawley agreed to hold said lands for the benefit of said Cantwell and Bethune was duly acknowledged November 1, 1888, and filed for record in the recorder's office of St. Francois county on the 14th day of August, 1889, and recorded in book 39 at page 142. That subsequent to said conveyance as aforesaid, and subsequent to the record thereof, the said Samuel L. Crawley made a second conveyance by which he attempted to convey the whole of the seven and one-half acres above described to defendants, James H. Shannon, John C. Shannon, C. W. Shannon and I. N. Shannon, which conveyance from said Crawley to the last above-named defendants was dated the 28th day of February, 1891, and recorded in the recorder's office of St. Francois county in book 41, at page 235. That at the time of said purchase by said defendants this property was wild land in possession of no one, and that the same was not occupied by either party to this suit until sometime in 1891, or 1892, less than ten years before the bringing of this suit.

"The court further finds that the said James H. Shannon, John C. Shannon, C. W. Shannon and I. N. Shannon at the time of their purchase had full notice and knowledge from the record of all the rights and interests of the said Bethune and Cantwell, as in said

agreement above referred to fully set out, and pur-
chased said property with such knowledge and notice.

"And the court further finds that since the insti-
tution of this suit the said John C. Shannon has de-
parted this life, and that this suit has been duly re-
vived in the name of his legal heirs and representa-
tives, who have all been properly served or have en-
tered their appearance herein.

"The court further finds that the said James H.
Bethune has conveyed his interest in the seven and one-
half acres above described, and that his interest therein
is now legally held by James P. Bridges, plaintiff here-
in. That Samuel L. Crawley, defendant, executed said
instrument to Bethune and Cantwell dated October,
1888, by which they obtained their title to the land in
controversy.

"On the second count in said petition the plain-
tiffs, H. J. Cantwell and James P. Bridges appearing
by attorney, and the defendants, Samuel L. Crawley,
James H. Shannon, C. W. Shannon, John C. Shannon,
Jennie Shannon, Elizabeth Goodfellow (nee Shannon)
and David Goodfellow, her husband, Emma S. Shan-
non, Emma Level (nee Shannon) and Wm. Level, her
husband, I. N. Shannon, Susan Spradling (nee Shan-
non), and Andrew Spradling, her husband, Louis C.
Shannon, Edward D. Shannon, and appearing by at-
torney, and Frank Shannon, appearing by his duly ap-
pointed guardian and curator and also by attorney, and
submit to the court the matters in controversy upon
the pleadings and evidence adduced, and the court be-
ing fully advised in the premises, doth find that the al-
legations of plaintiffs' petition herein are true.

"The court doth further find that plaintiffs, H. J.
Cantwell and James P. Bridges, assignee of James H.
Bethune, are each entitled to an undivided one-third
part of the real estate in said petition described as fol-
lows: That part of the south half of the northeast
quarter and the southeast quarter of the northwest

quarter of section 8, township 36 north, range 5 east, lying south of the county road leading from Farmington to Potosi and east of the tract of land in said northwest quarter of section 8 aforesaid, conveyed by Wm. R. Taylor and wife to J. H. and C. W. Shannon, said land containing by estimation seven and one-half acres, more or less, and that the defendants James H. Shannon, Charles W. Shannon and I. N. Shannon own each thirteen one hundred and forty-fourths of the said property above described, and that the defendants Elizabeth Goodfellow, Wm. S. Shannon, Emma Level, Susan Spradling, Louis C. Shannon, Edward D. Shannon, Albert T. Shannon, Jennie Shannon, and John H. Shannon own each one hundred and forty-fourths interest in said property above described.

"And the court doth further find that from the nature and amount of the property to be divided and the number of owners thereof that partition in kind of said real estate can not be made without great prejudice to the owners thereof."

The court then declared the law of the case to be as follows:

"First. That the plaintiffs' right of action was not barred by the Statute of Limitations at the commencement of this suit, either in law or equity.

"Second. That under the instrument executed to Bethune and Cantwell, the plaintiffs are entitled to the two-thirds of the property in controversy, and to a decree of title to the same.

"Third. That the defendants herein at the time they purchased said property purchased with full record notice of the claim and rights of plaintiffs, and made said purchase subject to the rights of plaintiffs.

"Fourth. That plaintiffs were not guilty of any such laches as in equity are or can bar their right of recovery.

"Plaintiffs under the proof in this case are entitled to a decree vesting title to the undivided two-thirds

of the land in controversy, and also to the judgment as prayed for in partition.''

In addition to the facts as found by the court it seems, that two different tracts of land were embraced in the trust agreement, one containing about one hundred and sixty acres, the other, the one in question, containing seven and one-half acres more or less.

The first tract is described in said agreement as ''two undivided third interests in all rights and interests acquired or to be acquired by me under and by virtue of an agreement by Geo. M. Williams to convey to me [then follows the description of said tract] upon the terms and conditions specified.'' The contract then proceeds as follows: ''Also two undivided thirds of that part of the south half of the northeast quarter and the southeast quarter of the northeast quarter in section eight, township thirty-six north of range five east, lying south of the county road leading from Farmington to Potosi, in St. Francois county.''

Defendants' contention is that the trust agreement is an indefinite one, affecting two different tracts of land, founded upon a consideration dependent upon the entire performance of the contract, and is not divisible, but is an entirety and can not be enforced in equity in piecemeal. If the trust agreement was, as defendants contend, an entirety, and its material provisions were common with and dependent upon each other, there could be no question with respect to the correctness of their contention; but it is otherwise if the contract is divisible. ''A divisible contract is one in its nature and purposes, susceptible of division and apportionment, having two or more parts in respect to matters and things contemplated and embraced by it, not necessarily dependent upon each other, nor is it intended by the parties that they shall be.'' [7 Am. and Eng. Ency. of Law (2 Ed.), 95.]

Now, the contract shows upon its face that all the lands, rights and interest described in the contract

were purchased by Crawley with funds furnished by himself,. Cantwell and Bethune, and, while the larger tract is described as "two undivided third interests in all rights and interest acquired or to be acquired by me" (Crawley) "under and by virtue of an agreement by George M. Williams to convey to me" (Crawley) the lands described "upon the terms and conditions therein specified," and, as to this tract the contract is incomplete in that it does not specify any time when the trust imposed shall be discharged and as to the consideration upon which it was founded,. it is uncertain from the agreement whether Crawley had already purchased this tract at the time the agreement was entered into, or whether he was to purchase it thereafter; if the latter, it was executory in its character and provisional only, because other conveyances were contemplated in accordance with the terms of the trust; that is, a conveyance of the land by Williams to Crawley and by Crawley to Bethune and Cantwell. [McDonald v. Hewett, 15 Johns. (N. Y.) 348; Bishop on Eq. (2 Ed.), p. 31; Gaylord v. Lafayette, 115 Ind. 429; Sime v. Howard, 4 Nev. 484.]

Under such circumstances a court of equity will generally refuse to enforce such a contract. But as to the tract in question, defendant Crawley admits in his answer that he signed the. contract and agreement attached to plaintiffs' petition, and that he bought of George W. Williams the seven and one-half acres of land described therein. There was nothing more to be done with respect to this tract.

In Pugh v. Hayes; 113 Mo. l. c. 431, it is said: "The first section of our statute concerning uses and trusts is in substance and effect the same as the statute of uses of 27 Henry VIII. If an estate is conveyed or devised to one in trust or for the use of another, and nothing more is said, the statute executes the use; that is to say, it transfers the legal estate to such other person; but, if the donee in trust or to uses is invested with

duties and powers, then a trust is created and the legal title does not pass to the *cestui que trust*. Such trusts are not and never were affected by the Statute of Uses.'' There was nothing in the trustee Crawley in so far as Cantwell and Bethune were concerned but a naked use, which the Statute of Uses at once executed in them. [Speed v. Railroad, 163 Mo. 111; Roberts v. Moseley, 51 Mo. 282; Cornwell v. Wulff, 148 Mo. 542.]

With reference to this tract the description of it begins with the word ''*also*,'' that is, ''in addition to,'' while as to the first tract the estate therein conveyed is ''all rights and interest acquired or to be acquired.'', Moreover the grantor refers in the declaration to an additional agreement to determine the estate in that tract conveyed—when as to the tract in question there is no such reference, but the whole estate is conveyed.

The interests in the two tracts were not necessary to each other, nor was it intended by the parties that they should be, nor does it appear that the parties would not have made the contract unless it embraced both tracts, or that both tracts were the essence of the contract. There is an absence of anything disclosed by the record which convinces us that there was a purpose to hold in trust the two tracts as an inseparable whole.

In Wooten v. Walters, 110 N. C. l. c. 255, it is said:

''On the other hand, a severable contract is one in its nature and purpose susceptible of division and apportionment, having two or more parts, in respect to matters and things contemplated and embraced by it, not necessarily dependent upon each other, nor is it intended by the parties that they shall be. Hence, an action may be maintained for a breach of it in one respect and not necessarily in another, or for several breaches, while in other material respects it remains intact. In such a contract the consideration is not single and entire as to all its several provisions as a whole; until it is performed it is capable of division

and apportionment. Thus, though a number of things be brought together without fixing an entire price for the whole, but the price of each article is to be ascertained by a rate or measure as to the several articles, or when the things being of different kinds, though a total price is named, but a certain price is affixed to each thing, the contract in such cases may be treated as a separate contract for each article, although they all be included in one instrument of conveyance, or by one contract. Thus, where a party purchased two parcels of real estate, the one for a specified price and the other for a fixed price, and took one conveyance of both, and he was afterwards ejected from one of them by reason of defect of title, it was held that he was entitled to recover therefor from the vendor. [Johnson v. Johnson, 3 Bos. & Pul. 162; Miner v. Bradley, 22 Pick. 459.] So also where a certain farm and dead stock and growing wheat were all sold together, but a separate price was affixed to each of these things, it was held that the contract was entire as to each item and was severable into three contracts, and hence a failure to comply with the contract as to one item did not invalidate the sale and give the vendor a right to reject the whole contract. In such case the contract may be entire or several, according to the circumstances of each particular case, and the criterion is to be found in the question whether the whole quantity—all of the things as a whole—is of the essence of the contract. If it appear that the purpose was to take the whole or none, then the contract would be entire; otherwise, it would be severable. It is sometimes difficult to determine whether the contract is entire or severable in such cases, and there is great diversity of decisions on the subject, 'but on the whole, the weight of opinion and the more reasonable rule would seem to be that where there is a purchase of different articles at different prices at the same time, the contract would be severable as to each article, unless the taking of the whole

was rendered essential either by the nature of the subject-matter or by the act of the parties.' This rule makes the interpretation of the contract depend on the intention of the parties as manifested by their acts and the circumstances of each particular case. [Brewer v. Tysor, 3 Jones 180; Niblett v. Herring, 4 Jones 262; Brewer v. Tysor, 5 Jones 173; Dula v. Cowles, 7 Jones 290; Jarrett v. Self, 90 N. C. 478; Chamblee v. Baker, 95 N. C. 98; Lawing v. Rintles, 97 N. C. 350; Pioneer Manufacturing Co. v. Assurance Co., ante, 176; Story on Cont., secs. 21, 25; 3 Parsons, Cont., 187; Whart., Contracts, secs. 338, 511, 748.]''

It therefore seems that the contract was severable.

It is said for defendants that plaintiffs have been guilty of such laches in asserting claim to or interest in the land in question as should bar their recovery in this action. Upon this question the court found, and the evidence sustains that finding, that when defendants bought the land in question on February 28, 1891, it was wild land, in the actual possession of no one, and was not occupied by either party to this suit until sometime in 1891 or 1892, less than ten years before the institution of this suit. On this theory of the case the court held that plaintiffs' cause of action was not barred by the Statute of Limitations. Nor were they guilty of any such laches as will in equity bar their recovery.

Defendants insist however that plaintiffs were guilty of such laches as to preclude their recovery. It has long since been settled by this court that mere lapse of time, short of the period fixed by the Statute of Limitations, will not bar a claim to equitable relief, when the right is clear, and there are no countervailing circumstances. [Kelly v. Hurt, 61 Mo. 463; Kelly v. Hurt, 74 Mo. 56; Dunn v. Miller, 96 Mo. 324; Lindell Real Estate Co. v. Lindell, 142 Mo. 61; Reed v. Painter, 145 Mo. 341.] There is, however, no well-settled rule on the subject of laches; each case being governed by its

own particular circumstances. In this case the contract under which plaintiffs claim was placed upon record in the proper county on the 14th day of August, 1889, was thereafter notice to everybody and showed that two-thirds of the purchase-money had been paid by plaintiffs.

The land was then wild woods land and so remained, until the fall of 1891, when defendant took possession of it, and built a little house on it to put corn in. They were not induced by any wrongful act of plaintiffs to change their position, or to purchase or improve the land. Plaintiffs' right is clear and, as there are no countervailing circumstances, they are not prohibited from recovery by reason of laches, or the Statute of Limitations.

Our conclusion is that the finding of the court is fully sustained by the evidence, and the judgment and decree are in accordance therewith.

The judgment is therefore affirmed.

*Gantt, J.*, concurs, *Fox, J.*, not sitting.