MARY A. SEE v. SYLVESTER C. SEE, Appellant.

Division One, June 16, 1922.

1. **SPLITTING CAUSE OF ACTION.**   Plaintiff cannot split his cause of action and maintain separate suits for different parts thereof.

2. ———: Cause of Action: Same Subject-Matter.   Where plaintiff's demand is an entirety and grows out of the same subject-matter, although consisting of several items, he has but one cause of action.

3. ———: Demand for Rent of Single Tract: Different Years: Quantum Meruit: Plea in Abatement.   On the same day in which plaintiff filed her suit in this case to recover the rental value of her home-

stead from March 1, 1917, to March 1, 1920, she filed another peti-
tion in the same court to recover the rental value of the same
tract from March 1, 1899, to March 1, 1917, the two petitions dif-
fering otherwise only in the fact that in the first she sued for the
rental value of the land excluding buildings and in the second
for its rental value including buildings. The first suit was tried
before a jury and a verdict rendered for defendant, who filed a
plea in abatement in the second (the instant) suit on the first
day of the return term, moving a dismissal on the ground that the
two alleged causes of action existed at the time both suits were
instituted and both grew out of the same subject-matter and
compose one entire cause of action. Said plea was overruled, and
defendant filed a term-bill of exceptions. *Held*, that there was
but one cause of action, and the demand was entire, namely, a de-
mand, by *quantum meruit*, for the rental value of the same tract
of land, for different years, by the one plaintiff against the one de-
fendant, and by splitting her demand plaintiff abandoned her right
to maintain the present suit, and a judgment for her is reversed.
Both claims could have been embraced in one action, and by di-
viding her cause into two suits and going to judgment on one, she
abandoned her right to maintain the other.

Appeal from Montgomery Circuit Court.—*Hon. Ernest
S. Gantt*, Judge.

REVERSED.

*Emil P. Rosenberger* and *Glover E. Dowell* for ap-
pellant.

(1) Plaintiff by instituting two suits on the same
day in the same court returnable to the same term, and
both suits involving the use and rent of plaintiff's home-
stead lands by defendant from March 1, 1899, to March
1, 1920, split her cause of action and she is debarred from
prosecuting said suits. Berkshire v. Hall, 202 S. W. 414;
Friedman-Keller & Co. v. Olson, 173 S. W. 28; Fullerton
Lumber Co. v. Massard, 128 S.-W. 831; Pieper Auto
Co. v. St. Louis U. Tr. Co., 187 S. W. 109; Savings Bank
v. Tracy, 141 Mo. 252. (2) The court should have con-
solidated cases numbers one and two. Secs. 1393, 1394,
R. S. 1919.

*Claude R. Ball* for respondent.

(1)   Defendant's plea in abatement was properly overruled.   (2)   Defendant's motion to consolidate cases numbers one and two was properly overruled   The consolidation of cases is only permitted under the provisions of Section 1393, Revised Statutes 1919, and then it rests in the discretion of the trial court.

ELDER, J.—This is an action for $4320 rent from March 1, 1917, to March 1, 1920, for the use and cultivation by defendant of 240 acres of land in Montgomery County, Missouri, in which plaintiff had a life estate.

Plaintiff is defendant's mother.   Noah See, husband of plaintiff and father of defendant, died testate in the year 1890, seized and possessed of the 240 acres in question, together with a large amount of other real estate and considerable personal property.   Noah See's will was duly admitted to probate in the Probate Court of Montgomery County.   By the sixth clause of the will the 240 acres of land involved herein was devised to Edward E. See, son of Noah See, subject to plaintiff's right to occupy the same as her homestead during her natural life.   The will also bequeathed to plaintiff $1000 in stock and farming implements, $500 in cash, and one-third of all the interest and rents derived from leasing all of the testator's land.   It further provided that if plaintiff lived to enjoy the use and possession of the 240 acres after Edward E. See became of age, then in lieu of the right of said Edward E. See to occupy said land he should be paid $250 a year out of the money belonging to the estate, such amount being five per cent on the estimated value of $5,000 placed on the land by the testator.   Upon the death of plaintiff the land was to descend to and become vested in Edward E. See.   By deed dated December 29, 1898, Edward E. See conveyed the 240 acres to defendant herein, "subject to the life interest of Mary A. See," plaintiff herein.   March 1, 1899,

defendant went into possession of the land, allowing plaintiff to occupy and use the house and garden, and giving her room for a horse and cow in the stable on the place.

The petition alleges the life interest of plaintiff, avers that defendant took possession of the land as plaintiff's tenant on March 1, 1917, and continuously thereafter used, cultivated and farmed the same, alleges that the reasonable rental value of the land is six dollars per acre, or $1440 a year, and prays judgment for $4320.

The answer is of great length. It sets up in part that plaintiff and all of the devisees and legatees of Noah See had entered into a mutual agreement whereby the lands and personal estate of Noah See were divided between plaintiff and her children, in a manner satisfactory to plaintiff and said children, many of the provisions of the will of Noah See being waived; that after such arrangement it was agreed between plaintiff and defendant that defendant was to occupy, till and farm the 240 acres in question for his own use, upon complying with certain specified conditions for the benefit of plaintiff, and plaintiff was to occupy the house thereon for homestead purposes; that on January 16, 1909, the oral agreement so entered into was reduced to writing; that from said January 16, 1909, until September 26, 1917, defendant continued under said written agreement to occupy and farm the said land, fully performing the conditions named in the agreement; that in the fall of 1917 one of defendant's brothers, and other children of plaintiff, commenced advising plaintiff that the agreement theretofore entered into was not fair and satisfactory to her; that as a result of the controversy which thus arose the agreement of January 16, 1909, was canceled, and a new agreement in writing was entered into on September 26, 1917, under which defendant was to pay to plaintiff during her lifetime $400 per annum in quarterly installments, beginning January 1, 1918; that under date of September 26, 1917, plaintiff there-

upon executed a quit-claim deed to defendant, convey-
ing the land in question, and moved off the said land,
surrendering the entire possession thereof to defend-
ant; that relying on the said deed, defendant has since
sold a part of the land and such part has passed from
his possession and control; and that defendant has reg-
ularly on the first day of each quarter paid the quarterly
annuity of $100 provided for by the agreement of Sep-
tember 26, 1917.

To this answer plaintiff filed a lengthy reply, al-
leging in part that she was 89 years old; that she was
feeble, uneducated and inexperienced in business mat-
ters and unacquainted with the rental value of said
land; that by prearrangement plaintiff's sons, M. F.
See and T. J. J. See, and defendant's attorney, called
at plaintiff's homestead and induced her to sign the con-
tract of September 26, 1917, and the quit-claim deed to
defendant, concealing the true rental value of said home-
stead and plaintiff's rights in relation thereto. The
prayer of the reply is for a cancellation of the agreement
and deed.

The record is somewhat voluminous, comprising
392 pages. There was much evidence adduced which
was irrelevant to the issues presented. Both sides in-
troduced evidence with respect to the execution and per-
formance of the contracts mentioned in the pleadings
and as to the rental value of the property. From the
view we take of the case, it becomes unnecessary, as will
hereinafter appear, for us to dwell upon the details of
the evidence.

A trial was had before the court, a jury being
waived. The court found that defendant had sold and
delivered possession of 40 acres out of the 240 acre
tract involved, that the reasonable rental value of plain-
tiff's homestead from March 1, 1917, to March 1, 1920,
was $800 per annum, and that defendant had paid to
M. F. See as trustee for plaintiff the sum of $1000 on
account of rent. Judgment was rendered for plaintiff

in the sum of $1400. After an unsuccessful motion for new trial defendant has appealed.

Defendant assigns several grounds of error. We are particularly impressed with one of such assignments, which, if it is to be sustained, is decisive of the case. Preliminary to a consideration thereof, it becomes essential to state additional facts.

The petition in the suit at bar was filed September 20, 1919, in the office of the Clerk of the Circuit Court for Montgomery County. Said petition has been hereinbefore briefly adverted to. On the same day, in the same court, returnable to the same term, another suit between the same parties was filed. The petition in that case is for the recovery of rent for the same 240 acres Splitting involved herein, and is practically identical in Cause of Action. language with the petition in the instant suit.

The only difference is that: 1, The rental there sought to be recovered is from March 1, 1899, to March 1, 1917, instead of from March 1, 1917, to March 1, 1920, as here; 2, The amount there sued for is $14,580, after having allowed defendant $150 per year for "meat, lard and corn and for labor in cutting and hauling fire wood for plaintiff;" 3, It is there alleged that defendant took possession of "all her said land *except the buildings thereon,*" and here the allegation is that he took possession of "all her said land." The practical difference therefore is that in Suit No. 1, as it is referred to in the briefs, plaintiff sues for a greater amount of rent, covering a different period of time, and excluding buildings, while the rental sued for in the instant action, referred to as Suit No. 2, includes the buildings.

Suit No. 1 was tried before a jury and resulted in a verdict for defendant. From a judgment rendered thereon plaintiff appealed to this court, where the judgment was affirmed by Division No. 2 in a unanimous opinion. [See v. See, 237 S. W. 795.]

In the suit at bar defendant filed a plea in abatement on the first day of the return term, moving a dis-

missal on the ground that "the two alleged causes of action sued for by plaintiff existed at the time both suits were instituted and that they both grew out of the same subject-matter, and compose one entire cause of action, and that plaintiff has split her one entire demand and cause of action." This plea was overruled and defendant filed a term bill of exceptions. Thereafter defendant filed a motion to consolidate the two causes. This motion was likewise overruled and defendant filed a second term bill of exceptions. Thereafter defendant filed the answer hereinbefore referred to. Defendant now renews his contention, urging that by instituting two suits on the same day in the same court returnable to the same term, and both suits involving the use and rent of plaintiff's homestead lands, plaintiff has split her cause of action and is debarred from prosecuting this suit, wherefore the court erred in overruling defendant's plea in abatement.

The earliest consideration in this State of the doctrine contended for by defendant is found in Wagner v. Jacoby, 26 Mo. 532, where the rule is enunciated that "a plaintiff having an entire demand growing out of a single transaction cannot split it up into separate suits."

In Flaherty's Admr. v. Taylor, 35 Mo. 447, the principle is expressed, that "where the demand is an entirety, although consisting of several items, if judgment be recovered for part of it, the judgment is a bar to an action for the remainder."

A leading case dealing with the subject under review, and which has been frequently followed, is that of Savings Bank v. Tracey, 141 Mo. 252, wherein GANTT, J., stated the rule thus, l. c. 258:

"No rule of law is better settled than that a single cause of action cannot be split in order that separate suits may be brought for the various parts of what constitutes but one demand, and the rule is founded upon the plainest and most substantial justice. It is an old maxim of the common law that 'no one ought to be twice vexed for one and the same cause.' It has always been

regarded as a matter of concern to the State that litigation should have an end and that no citizen should be unnecessarily harassed with a multiplicity of suits. That such has been the law of this State for many years, the decisions of this court all attest.''

In Keller v. Olson, 187 Mo. App. 469, the doctrine is expressed thus, at page 473:

''It is elementary law that a person having a single demand, although made up of several distinct items, cannot split the same so as to make two causes of action, and a judgment concludes the parties in respect to the whole cause of action sued on whether the suit included the whole or only a part of the demand sued for. This rule applies, although the items are in their nature distinct and arise or become due at different times, if they grow out of a single tort or contract.''

To the same effect is Bircher v. Boemler, 204 Mo. 554; Fullerton Lumber Co. v. Massard, 128 S. W. (Mo. App.) 831; Peper Automobile Co. v. St. Louis Union Trust Co., 187 S. W. (Mo. App.) 109; Berkshire v. Hall, 202 S. W. (Mo. App.) 414; Union Railroad Co. v. Traube, 59 Mo. 355; Donnell v. Wright, 147 Mo. 639.

The two suits filed by plaintiff dealt with but a single demand, to-wit, for rent due from defendant. True, this rent accrued, at least according to the petition in the suit at bar, each year. However, the entire rent grew out of the same tenancy agreed upon between plaintiff and defendant. And as said in Keller v. Olson, supra, ''the true rule which determines whether a party has only a single and entire cause of action for all that is due him and which must be sued for in one action, or has a severable demand for which he may maintain separate suits, is whether the entire amount arises from one and the same act or contract, or the several parts arise from distinct and different acts or contracts.''

Here both petitions are founded upon the same act, to-wit, the use and occupation of the land (including in one case the buildings) by defendant as a tenant of plaintiff. They are both based upon a *quantum meruit*, no specific rental being pleaded, but demand being made for

See v. See.

the reasonable rental value of the land. Undoubtedly both claims could have been embraced in one action. In one petition it could have been alleged substantially that plaintiff was the owner of the homestead interest; that from March 1, 1899, to March 1, 1917, defendant had possession of and used all of the land except the buildings thereon; that for such use and occupation he owed plaintiff $14,580; that from March 1, 1917 to March 1, 1920, defendant used and occupied the land including the buildings; that for such use and occupation he was indebted to plaintiff in the sum of $4320; and that for the entire period of time plaintiff was entitled to judgment for $18,900. Plaintiff, however, saw fit to sue for a part of her demand in Suit No. 1, and now seeks to recover the remainder in this action. This, upon the authority of the adjudications cited supra, we hold she cannot do, for such course amounts to a splitting of her cause of action.

As somewhat relevant to the instant situation we find the case of Taylor v. Heitz, 87 Mo. 660. There a grantor conveyed land by a deed containing a covenant against encumbrances done or suffered by him. There was in fact an outstanding lease made by the grantor, and before its expiration, the lessees refusing to yield possession, the grantee in the deed brought suit and recovered damages for breach of the covenant. Subsequently a second suit was brought seeking to recover further damages for the breach. In this second suit an offer was made to prove the value of the rents and profits which had accrued subsequent to the time of assessment of damages on the first inquiry. This court held that the subject-matter of the action being the same, to-wit, the breach of the covenant, such proof was properly excluded, as plaintiff was obliged in the first action to introduce all his proof as to the entire damages and have the same admeasured and adjudged.

From what has been said it follows that plaintiff is precluded from any recovery hereunder. The judgment of the trial court must accordingly be reversed.

It is so ordered. *Graves* and *James T. Blair, JJ.,* concur.