Otto Knapp et al., Appellants, v. Benjamin R. Strauss, Respondent.—58 S. W. (2d) 805.

Kansas City Court of Appeals. March 6, 1933.

*Mosman, Rogers & Buzard* and *Louis N. Wolf* for appellants.

*Gossett, Ellis, Dietrich & Tyler* and *B. H. Schwartz* for respondent.

BOYER, C.—Plaintiffs sought damages for the breach of a contract to buy real estate. At the close of the evidence in chief, defendant requested a peremptory instruction to find for him which the court marked given, and the plaintiffs then took an involuntary nonsuit with leave. It was adjudged that plaintiffs take nothing by their action and that defendant be discharged with his costs. After motion to set aside the nonsuit was considered and overruled, plaintiffs duly appealed and insist that the evidence made a case for the jury.

The suit was instituted against respondent and another, but the codefendant was dismissed from the case for lack of service. The amended petition upon which the case was tried alleges that by a written contract plaintiffs agreed to sell, and the defendants agreed to buy, certain real estate owned by the plaintiffs for a stated consideration of $35,000; said contract of purchase to be completed

not later than a stated time prior to the 31st day of August, 1932. The provisions of the contract in reference to the sale and purchase are set forth and plaintiffs allege that they were at all times ready, able and willing to perform said contract and convey the property as provided, and that defendants informed plaintiffs that they would not perform said contract and would not purchase said property as provided therein, and that they have failed and refused to buy the property and have breached their said agreement so to do; that at said time the property had greatly depreciated in value and as a consequence of the breach of defendants, plaintiffs have been damaged in the sum of $7500 for which judgment is demanded.

The separate amended answer of respondent admits that he and his codefendant on August 31, 1922, did enter into a certain written contract with plaintiffs termed a ''Lease and Contract;'' but denies that the true meaning and effect of said contract is alleged in plaintiffs' petition, and denies each and every other allegation of the petition. Further answering, defendant pleads that he has paid plaintiffs all rents and all sums of money that may possibly have become due to plaintiffs and denies that any rents or sums of money have accrued to plaintiffs or are owing to plaintiffs under any written contract. There is a further plea of *res judicata* and estoppel by judgment in a prior suit instituted by the plaintiffs against the defendants to recover rents due under the contract, in which said suit a judgment was rendered in favor of plaintiffs and against this defendant, and that said judgment was paid and fully satisfied. It is alleged that at the time of the institution of the action for rent said action included or should have included, and that plaintiffs were bound to include therein, all sums that might have been owing to plaintiffs either by way of rents or damages; and that the judgment in the prior suit is a bar to any other action. The answer also alleged that plaintiffs, without the consent of defendant, took possession of the real estate in question and ousted defendant and kept defendants from the use and enjoyment thereof and thereby did abrogate and annul the written lease and contract; that defendants submitted thereto and surrendered all their rights; that plaintiffs have elected to and did cancel and terminate the instrument of lease and contract, and that plaintiffs have elected to and did cancel and terminate all of the provisions of said lease and contract. The reply was a general denial.

The written instrument signed and acknowledged by all the parties was offered in evidence. It is entitled ''Lease and Contract.'' By its terms plaintiffs were designated as ''owners'' and the defendant and his codefendant were called ''tenants.'' The first part of the instrument contains the terms and conditions of a lease of the real estate in question with improvements thereon by the owners to the tenants for a term of ten years from the first day of September,

1922, to the last day of August, 1932. As rent for said premises the tenants agreed to pay $200 per month to the end of November, 1923, and thereafter $250 per month to the end of the term and to prepay said rent on the first day of each calendar month. The owners agreed to pay all taxes which could be paid on or before the 'first day of August, 1922, and the tenants agreed to pay all taxes which could be paid within the term of the lease. There were provisions for the insurance of the improvements on the property for the benefit of the owners and for the application of any insurance collected to the purpose of repair. Other provisions follow, one of which is that, "in case of violation or default of tenants, the owners will be entitled to immediate re-entry upon and repossession of the entire premises, and may wholly terminate this lease. . . . And the owners may in reduction of losses rent out the premises in whole or part to other tenants upon such terms and figures as to the owners may seem best; . . ." Provisions for the sale and purchase of the property are then set out in the following paragraphs:

"Tenants further obligate themselves to buy the leased premises from the Owners at such time as the Tenants may elect before the expiration of the said leased term, at the price of Thirty-five Thousand ($35,000.00) Dollars cash, and the Owners (provided Tenants shall have fully paid and performed the lease to that time) agree to sell said property and to convey the same (including any insurance policies paid for by Tenants, to Tenants or their order, at that price, by General Warranty Deed, with title good and free from all encumbrances except the taxes and assessments which under this lease are to be paid by the Tenants). Nothing herein however is intended to prevent the Owners prior to the consummation of said sale from placing such mortgages or deeds of trust upon the property as they may see fit in the meanwhile, provided, however, that such encumbrances shall not exceed said purchase price and shall not bear more than six per cent per annum interest. Any encumbrances now or hereafter existing against the property created by, for or on account of the Owners shall however, so far as the same constitute liens at the consummation of the sale be deducted from the $35,000.00 of purchase price above mentioned, so that the total cost of the premises free and clear to the Tenants, including encumbrances at the time existing against the same, shall not exceed the said $35,000.00. The Owners will protect and defend the Tenants and the property against foreclosure or loss by reason of any encumbrances created by or through the Owners. The obligations of Tenants under this lease shall cease from and after the consummation of said sale.

"Whenever the Tenants are ready to consummate said purchase, they shall give the owners written notice thereof. The Owners will within reasonable time after receipt of such notice deliver to Tenants a complete abstract of title covering said property. The Ten-

ants shall have fifteen (15) days for examination of such abstract, and shall in writing notify the Owners whether the title be found good or bad, and if defects be found, such defects shall be specified, and the Owners shall be allowed thirty (30) days within which to remedy such defects. The purchase shall in any event be completed by conveyance of the property and payment of the purchase price, within sixty (60) days from the delivery of notice of intent to purchase, and said notice must be given by Tenants not later than three (3) months before the end of the term.''

The evidence shows that the tenants took possession of the property under the lease and continued in possession thereof until after the middle of March, 1930, at which time they were in arrears for rent to the amount of $1150. Plaintiff Otto Knapp represented the plaintiffs in all transactions in reference to the deal. He testified that both plaintiffs owned the property, and also testified that the deed to the property was made in his name. Some time before March, 1930, defendant Strauss informed Otto Knapp that he was going to take over the property himself and assume responsibility therefor. Plaintiff Otto Knapp testified that he had been dealing with Mr. Strauss alone for about two years. On the 7th day of March, 1930, an attorney representing Mr. Strauss wrote to Mr. Knapp that he and Mr. Strauss would be in Kansas City and requested Mr. Knapp to get in touch with them on a day named. Mr. Strauss and his attorney arrived in Kansas City and Mr. Knapp met them on March 16, 1930. Mr. Knapp testified that when Mr. Strauss arrived ''I asked him what were his intentions with reference to the property. His answer was that he could do nothing. . . . That he could not follow up the contract; that he couldn't do anything further for me.'' MR. GOSSETT: ''Did he say he threw up the contract?'' MR. ROGERS: ''No.'' A. (continuing) ''He said he could do nothing further on the contract in reference to payment of the lease or accepting the property at the price agreed upon as a sale.'' Mr. Knapp also testified that the attorney in the presence of Mr. Strauss told him the same thing; that he had met the attorney before in connection with the deal and knew that he was the attorney representing Mr. Strauss, and when asked to state what the attorney said at the time, answered: ''He repeated that Mr. Strauss could absolutely do nothing for me; he couldn't fulfill his contract; that I could do as I pleased in reference to the matter; that I could seek my counsel and do as I liked about it; that I could take possession of my building and they practically could do nothing for me. . . . That is practically all that was said. I advised them on the matter that if it was closed at this I would have to do the best I could in reference to it; that I would seek my counsel and that they would hear from me in the future.'' He had no further com-

munication with them and testified that he was ready, able and willing to perform his contract at any time.

On the 20th day of March, 1930, plaintiffs instituted their action against the lessees to recover all rent accrued to that time, including the month of March. Judgment was eventually entered by stipulation in that suit for the sum of $1150, and the judgment paid. After the institution of the suit for delinquent rent and on March 28, 1930, plaintiffs instituted the present action to recover damages for breach of the contract to purchase the property. After both suits were filed and within a period of thirty days after the conversation with defendant and his attorney, plaintiffs took complete possession of the leased property and retained it. It was shown that the property in question had depreciated in value and at the time of the alleged breach of the contract to buy the reasonable market value was then $20,000.

In connection with the cross-examination of Mr. Knapp, the defendant put in evidence the pleadings and record entries in the prior suit for rent, over the objection of the plaintiffs that said matters were irrelevant.

Appellants assign error in the refusal of the court to submit the case to the jury and in compelling a nonsuit and in overruling plaintiffs' motion to set the same aside, and insist (1) that plaintiffs were entitled to an immediate right of action upon the repudiation of the contract to purchase the property; (2) that the agreement sued on is divisible into two separate and complete parts, one being a lease and the other a contract of sale and purchase, and that an action for rent due under the lease is not a bar to a subsequent action for breach of the contract to buy; and (3) that repossession of the property was not wrongful and was not a waiver of the right to claim damages for the breach of the agreement to purchase.

Respondent's main contentions are that the matters involved in the present suit are *res judicata* on account of the prior action and judgment in the rent case; that at the time the suit for rent was instituted all of plaintiffs' claims or demands arising out of the contract, according to plaintiffs' theory, had then accrued and that the contract in its entirety had been broken, and that plaintiffs could maintain but one action therefor and are estopped to prosecute the present suit by the judgment in the former one; that the lease and the agreement to sell and purchase were dependent and not independent agreements; and it is further contended that there was an offer by defendants to surrender the property and an unconditional acceptance thereof by the plaintiffs which constituted a dissolution of the lease and released defendant from any and all obligations in the entire agreement.

The main question for decision is the character of instrument signed by the parties. Is it entire or severable? This calls first for

a construction and interpretation of the "Lease and Contract" in order to find the true intention of the parties as expressed therein. When this is ascertained we can then say whether the instrument is entire or severable, indivisible or divisible, and whether its different parts are independent or dependent. If all the provisions of the contract are interdependent and give the whole agreement the character of oneness, in accord with the purpose and intention of the parties, no separation of its different parts into two contracts could be tolerated, and when such a contract is broken all demands must be recovered in one action and cannot be split and recovered separately in different actions.

However, separate agreements may be contained in a single instrument as well as in two instruments. If the intention of the parties can be ascertained from the entire writing that the purpose was to make separate and independent agreements upon separate subjects for different considerations and the performance to occur at different times, the instrument will be construed as divisible and the different provisions thereof as constituting independent covenants separately enforceable. Pertinent to the pending question it has often been observed that solution is sometimes difficult. The constituents of an entire contract and the characteristics of a severable one have called forth many definitions and the announcement and application of many rules, most of which were declared in view of the particular facts of the respective cases adjudged. In 13 C. J., page 561, section 525 et seq. is the following:

"As a general rule it may be said that a contract is entire when by its terms, nature and purpose it contemplates and intends that each and all of its parts and the consideration shall be common each to the other and interdependent. On the other hand, it is the general rule that a severable contract is one which in its nature and purpose is susceptible of division and apportionment. . . . But it is very difficult to lay down a rule which will apply to all cases, and consequently each case must depend very largely on the terms of the contract involved. A contract is not entire and indivisible because embraced in one instrument and signed by the same parties, nor is it severable because embraced in more than one instrument. . . .

"Primarily the question whether a contract is entire or severable is one of intention, which intention is to be determined from the language which the parties have used and the subject-matter of the agreement. A contract may both in its nature and its terms be severable and yet rendered entire by the intention of the parties.

"The divisibility of the subject-matter of the contract will not determine the entire or severable character of the contract, although it may often assist in determining the intention of the parties.

"A test of severability which has frequently been applied is to the effect that, if the consideration is single, the contract is entire, but

if the consideration is either expressly or by necessary implication apportioned, the contract will be regarded as severable, although this test will not necessarily prevail over other provisions of the contract showing a contrary intent of the parties.''

Copious citations of authority sustain the various statements of the text, and in like manner the authors of Ruling Case Law, with the clearness and accuracy which have always characterized their work, furnish the following in 6 Ruling Case Law, page 858, section 246:

''It is not always an easy matter to determine just what contracts are severable and what are not. The authorities agree that in determining whether a contract shall be treated as severable or as an entirety the intention of the parties will control, and this intention must be determined by a fair construction of the terms and provisions of the contract itself. In order to arrive at a correct construction, due regard must be had to the intention of the contracting parties as revealed by the language which they have employed, and the subject-matter to which it has reference. Some courts, it may be pointed out, appear to be inclined to treat contracts as severable. Whether a contract is entire or divisible cannot, under this view, be determined by a single term, phrase or sentence, though it is broad enough to include such meaning, unless throughout the whole agreement and from the surrounding circumstances it definitely appears that it was the intention of the parties that the contract should be entire and indivisible. But although it has been declared that a contract to do several things, at several times, is divisible in its nature, it may be said that the entirety of a contract depends upon the intention of the parties, and not on the divisibility of the subject. The severable nature of the latter may often assist in determining the intention, but will not overcome the intent to make an entire contract, when that is shown. As a means of ascertaining the intention of the parties, various tests have been adopted. According to some authorities, the criterion is to be found in the question whether the whole quantity, service or thing—all as a whole—is of the essence of the contract. If it appears that the contract is to take the whole or none the contract is entire. Another test that has been suggested is the possibility or impossibility of a certain apportionment of benefits, according to the compensation in the contract, in case of part performance only. The singleness or apportionability of the consideration appears, however, to be the principal test. If the consideration is single, the contract is entire; but if the consideration is expressly or by necessary implication apportioned, the contract is severable. The question is ordinarily determined by inquiring whether the contract embraces one or more subject-matters, whether the obligation is due at the same time to the same person, and whether the consideration is entire or appor-

tioned. . . . Where an agreement embraces a number of distinct subjects, which admit of being separately executed and closed, the general rule is that it shall be taken distributively, and each subject be considered as forming the matter of a separate agreement after it is so closed. If the part to be performed by one party consists of several and distinct items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied under the law, such a contract will generally be held to be severable.''

We are not furnished with the citation of any case by either party in which a contract like the one before us was adjudged to be either divisible or indivisible, and we have found no case adjudged upon the same state of facts. Both parties cite numerous authorities which in principle are said to sustain their respective positions. Cases typical of the ones relied upon by respondent are: See v. See, 294 Mo. 495, 502, 242 S. W. 949; Bobb v. Kier, 246 S. W. 926; Keller v. Olson, 187 Mo. App. 469, 173 S. W. 28; Producers' Packing Co. v. Fischer, 221 Mo. App. 639, 283 S. W. 747.

The opinions in these cases do not treat of the nature and character of entire and divisible contracts. They deal primarily with the subject of split demands arising out of one and the same contract and declare and reiterate the rule which prohibits the maintenance of different actions for demands which should have been recovered in a single action. The rule stated and applied is that where a party has several demands growing out of one and the same contract, which may be joined in one action, they shall be joined, and if the cause of action be split up and a suit brought for part only and subsequently a second suit for the residue, the first action may be pleaded as a defense to the second. The argument of respondent stresses this proposition to maintain the defense of *res judicata.* There is little said about the nature of the contract and the argument proceeds largely upon the implied assumption that the contract involved in this suit is entire. It is urged that according to plaintiffs' evidence and plaintiffs' theory the lease and contract were broken at the same time; that all of their demands or causes of action then accrued, and if all of said demands were not included in the prior suit they could not thereafter be asserted. It is true that the breach of the lease by failure to pay rent and the breach of the contract to purchase were concurrent and that plaintiffs' causes of action were coexistent when defendant refused further performance. Upon a repudiation of the agreement to buy the plaintiffs' right of action therefor was immediate. They were not required to wait for the expiration of the designated term of the lease. [Armstrong v. Dunn, 163 Mo. App. 701, 147 S. W. 509; Eddington v. Cockrell, 286 S. W. 405, 406; Hiatt Inv. Co. v. Buehler, 16 S. W. (2d) 219, 226.]

It does not follow from the above that the plaintiffs were required to seek their remedy for unliquidated damages on account of the breach of the purchase agreement in the suit to recover delinquent rent for a liquidated amount, unless the "Lease and Contract" constituted a single agreement composed in its entirety of dependent parts. It is argued by respondent that "by the contract as a whole both parties thereto agreed that if lessees did not perform the lease they would not desire, nor would the lessors allow them to purchase the property, but both parties would be remitted to their respective rights, remedies and defenses on the lease item or feature alone of the entire agreement." It is also urged that the sale and purchase agreement is not an absolute contract of sale and purchase, but is in the nature of a conditional option. Attention is called to the parenthetical phrase in the sale agreement which is to the effect that "the Owners (provided Tenants shall have fully paid and performed the lease to that time) agree to sell said property and to convey the same." By the terms of the contract set out in the statement the tenants were obligated to buy the leased premises at their election, sometime before the expiration of the term and at a stated price; and the owners obligated themselves to sell on the terms set forth, provided the tenants paid the rent and performed their part of the lease. This latter provision was for the sole benefit of the owners and a compliance with it could be waived and the owners demand a completion of the purchase agreement notwithstanding a breach of the lease by the non-payment of rent. [13 C. J. 670; Grams v. Novinger, 231 S. W. 265; Robertson v. Energy Const. Co., 294 S. W. 426; Dobbins v. Edmonds, 18 Mo. App. 307.] The contract does not permit the construction that the tenants could at will defeat the purchase agreement merely by a failure to pay rent, nor a construction that the agreement to buy was in the nature of a conditional option. No such intention is manifested by any language in the agreement and a rational interpretation does not permit the conclusion that the parties so intended.

We cannot agree with the construction placed upon the agreement by the respondent; and upon consideration of the whole instrument executed by the parties, we are of opinion that it "is one which in its nature and purpose is susceptible of division and apportionment:" that it is severable and contains separate contracts, one to rent and the other to buy; that the breach of the separate obligations will permit separate causes of action; and that the judgment for rent is not a bar to the subsequent suit for damages on account of the failure to purchase. These conclusions are justified by a proper construction of the document itself. The intention of the parties is made plain. There is a complete contract to let and hire the premises for a stated term. The subject-matter is a tenancy, and the consideration is named in definite amounts to be paid monthly. At the con-

clusion of the stipulations to lease and hire there follows another contract between the same parties for the sale and purchase of the property. Here is a new subject-matter upon which the parties agree. The consideration is separately named and apportioned. The time for performance is indicated. A breach of the purchase contract could be indemnified by damages in an unliquidated amount; a breach of the lease by failure to pay rent would be the basis of a judgment for a liquidated amount. Evidence called for in actions for the separate breaches would be different. One action would be for debt and the other for damages. The two parts of the "Lease and Contract" are distinguished by a difference in subject-matter, a separately apportioned consideration, a separate performance, and by different evidence that would be required to recover for a breach of the several obligations. All of these things, singly or together, have been indicated as tests in determining whether contracts were intended to be and are entire or severable.

In addition to the authorities heretofore cited, and by analogy, our conclusions that the signed instrument is divisible and that plaintiffs can maintain separate actions for breaches of the independent parts of the contract are supported by the rules and principles declared in numerous cognate cases in our own and other jurisdictions. Some of them are: Cantwell v. Crawley, 188 Mo. 44, 55, 86 S. W. 251; Lincoln Trust Co. v. Nathan, 175 Mo. 32, 46, 74 S. W. 1007; Boyce v. Christy, 47 Mo. 70, 72; Turner v. Mellier, 59 Mo. 526, 535; Baumhoff v. St. Louis & K. R. Co., 205 Mo. 248, 269, 104 S. W. 5, 11; State ex rel. Standard Regulator Co. v. Fidelity & Deposit Co. of Maryland, 228 S. W. 865, 867; Danciger v. American Express Co., 192 Mo. App. 106, 179 S. W. 806, 808; Ideal Savings & Homestead Assn. v. Gould (La.), 124 So. 688; La Haye v. Borated Specialty Co., 115 N. Y. S. 843, 844; Landes v. Landes, 220 N. Y. S. 469, 473; Voyles v. Straka (Utah), 292 Pac. 913; Hausler v. Harding-Gill Co. (Tex.), 6 S. W. (2d) 445; Zambetti v. Commodores Land Co. (Fla.), 136 So. 644; Union & Planters' Bank & Trust Co. v. Corley (Miss.), 133 So. 232; Bennett v. Petroleum County (Mont.), 288 Pac. 1018, 1020; A. H. Andrews Co. v. Colonial Theater Co., 283 Fed. 471, 474; Traiman v. Rappaport, 41 Fed. (2d) 336, 71 A. L. R. 475 and note; Raichert v. Mulder (Neb.), 235 N. W. 680; Burkhart v. Brownfield (Tex.), 33 S. W. (2d) 885.

We see no merit in the pleaded defense that plaintiffs on or about April 18, 1930, without consent of defendant, re-entered and relet the premises and that they thereby cancelled and terminated all provisions of the entire contract. Under the terms of the lease, plaintiffs were entitled to re-enter upon default in payment of rent and were expressly authorized to rent out the premises "in reduction of losses." Both under the terms of the lease and under the law it was the duty of plaintiffs to relet the premises in order to minimize damages, and

832

this of course for the benefit of the lessee. [*Crow v. Kaupp,* 50 S. W. (2d) 995, 998.] The re-entry alleged and shown was subsequent to the abandonment of the contract and a repudiation of the obligation to buy the property. Plaintiffs' right of action for a breach of the independent agreement to purchase accrued at the time of repudiation and was not dependent upon the continuation of the tenancy to the end of the time within which defendant was obligated to buy.

The record does not reveal the reason for the ruling of the learned trial court and we fail to find any legal reason to support it. Under the evidence presented, plaintiffs were entitled to have the issues of fact submitted to the jury and their damages, if any, determined. The motion to set aside the enforced nonsuit should have been sustained. The judgment for defendant should be reversed and the case remanded for trial. The Commissioner so recommends. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., submitted to the court February 28, 1933, is adopted as the opinion of the court. The judgment is reversed and the case remanded. All concur.