[Nos. 33740, 34151. Department One. August 29, 1957.]

PUGET SOUND MUTUAL SAVINGS BANK, *Respondent,* v.
OLGA C. LILLIONS *et al., Appellants.*
PUGET SOUND MUTUAL SAVINGS BANK, *Plaintiff and Relator,*
v. OLGA C. LILLIONS *et al., Defendants,* THE SUPERIOR COURT
FOR KING COUNTY, *Story Birdseye, Judge, Respondent.*[1]

[1] Reported in 314 P. (2d) 935.

*Christ D. Lillions* and *L. C. Brodbeck*, for appellants.

*Kumm, Maxwell & Lee*, for respondent.

WEAVER, J.—Defendants, husband and wife, appeal from a decree that grants a money judgment against them and forecloses a mortgage given to secure the promissory note upon which the judgment is based.

The promissory note, dated February 4, 1952, provides:

"If default be made in the payment of any installment when due, such installment shall bear interest until paid at the rate of ten per cent per annum, but, at the option of the holder of this note, without prior notice, the entire indebtedness hereby represented shall immediately become due, and shall thereafter bear interest at the rate of ten per cent per annum until paid."

The mortgage upon the real property contains a similar provision for acceleration of the indebtedness in the event certain conditions are breached.

Defendants did not pay the monthly installments due October 15 and November 15, 1954. They were also in default for nonpayment of certain taxes against the mortgaged property. November 26, 1954, plaintiff elected to declare the entire indebtedness due, pursuant to the provisions for acceleration which appeared in the note and mortgage. Plaintiff manifested its election by filing this action in the superior court.

November 29, 1954, defendant husband tendered his check for one of the delinquent monthly installments. It was returned to him by registered letter received December 3rd. The letter advised him that plaintiff had elected to declare the entire debt due and had already instituted suit to foreclose the mortgage. Defendant husband retendered his first check, certified, and also a bank cashier's check for the other delinquent installment. These, too, were returned to him by plaintiff. Defendants were served with summons and complaint December 10, 1954. They paid the delinquent real property taxes on December 13, 1954.

█ A stipulation in a mortgage, providing that the whole debt secured thereby shall become due and payable upon failure of the mortgagor to pay the interest or any installment of principal as it falls due, or to comply with any other condition of the mortgage, is a legal, valid, and enforceable stipulation. It is not in the nature of a penalty or forfeiture which a court of equity would refuse to enforce.

"It is only when the default is attributable to the unconscionable or inequitable conduct of the mortgagee that he cannot avail himself of the benefits of the acceleration clause." *Jacobson v. McClanahan*, 43 Wn. (2d) 751, 755, 264 P. (2d) 253, 5 A. L. R. (2d) 968 (1953).

Defendants argue: (1) That plaintiff did not complete its election to accelerate payment of the note until December 10, 1954, the date defendants were served with summons and complaint; that defendants were not in default on that date, because they had previously tendered the two delinquent installments upon which acceleration of the debt and foreclosure of the mortgage are based. (2) That

it is inequitable to permit acceleration, because defendants paid the delinquent taxes immediately after service of the summons and complaint, and, prior to trial, deposited the accrued monthly payments into the registry of the court.

We cannot agree with either contention.

■ In *Weinberg v. Naher*, 51 Wash. 591, 594, 99 Pac. 736, 22 L. R. A. (N.S.) 956 (1909), this court said:

"The debt does not become due on the mere default in the interest payment. Some affirmative action is required, some action by which the holder of the note makes known to the payors that he intends to declare the whole debt due. This exercise of the option may of course take different forms. It may be exercised by giving the payors formal notice to the effect that the whole debt is declared to be due, or by the commencement of an action to recover the debt, or perhaps by any means by which it is clearly brought home to the payors of the note that the option has been exercised before the interest is paid or tendered."

■ Plaintiff took affirmative action by declaring the entire debt due when it filed its complaint on November 26, 1954. This action was "clearly brought home" to defendant husband (a lawyer) on December 3, 1954, at which time at least one monthly installment and the taxes were delinquent. Further, the taxes were not paid until *after* service of the summons and complaint on both parties defendant. See, also, *Gunby v. Ingram*, 57 Wash. 97, 106 Pac. 495 (1910). The entire debt having matured, no further right existed to make monthly payments, and plaintiff was not required to accept them.

■■ The record supports the findings of the trial court that plaintiff did not act "inequitably in commencing foreclosure action." Since the issue was presented, it was not error for the trial court to admit evidence of the history of this mortgage loan and the record of defendants' payments in order to rebut the argument that plaintiff acted in an unconscionable manner when it declared the entire debt due.

For the sake of brevity, we refer to the property described in the mortgage as "Parcel A."

On February 4, 1952, and prior thereto, "Parcel A" was entirely surrounded by other real property owned by defendants. Ingress and egress to "Parcel A" from the county road is over an established driveway. Poles, placed along the driveway, carry utilities to the residence on "Parcel A." We designate the legal description of the driveway (appearing in the decree) as "Parcel B." Water for "Parcel A" is obtained from a spring located on property owned by defendants and conveyed to "Parcel A" across land, also owned by defendants, which we designate as "Parcel C." There is no reference in plaintiff's mortgage to any easements of ingress or egress or water rights of any kind appurtenant to "Parcel A." The trial court found, and the record supports the finding, that

". . . by reason of their apparent and continuous use of said easements and by reason of the fact that said easements were necessary to the proper and reasonable enjoyment of Parcel "A", said defendants had imposed upon Parcels "B" and "C" obvious and reasonably necessary permanent servitudes in favor of Parcel "A" . . ."

The trial court concluded, and the decree provides, that upon sale of "Parcel A," by foreclosure of the mortgage, the obvious and necessary permanent servitudes in favor of "Parcel A," imposed by the defendants on "Parcels B and C," will pass with the grant of "Parcel A."

Prior to the execution of the mortgage, the situation was one which frequently arises when one portion of a parcel of land has certain rights in another portion of the same tract. Were the two portions separated and owned by different persons, the right enjoyed by the owner of one portion (the dominant estate) in the other portion (the servient estate) would be a legal easement. Absent this separation of ownership, many authorities refer to this situation as a "quasi easement." *Adams v. Cullen*, 44 Wn. (2d) 502, 504, 268 P. (2d) 451 (1954), and cases cited.

Upon execution of the mortgage, there came into being a potential means by which an involuntary separation of the parcels might result.

In *Dreger v. Sullivan,* 46 Wn. (2d) 36, 37, 278 P. (2d) 467 (1955), we quoted from *Adams v. Cullen, supra,* as follows:

"An implied easement (either by grant or reservation) may arise (1) when there has been unity of title and subsequent separation; (2) when there has been an apparent and continuous quasi easement existing for the benefit of one part of the estate to the detriment of the other during the unity of title; and (3) when there is a certain degree of necessity (which we will discuss later) that the quasi easement exist after severance."

■ The facts of the instant case meet the requirements of this rule unless it can be said that the rule is inapplicable, because the possible separation of "Parcel A" arises from a mortgage transaction resulting in a forced judicial sale, instead of arising by conveyance, in which event the implied easements would arise from an implied grant thereof. We conclude that this distinction is without merit and find support for our conclusion in the *rationale* of the decision of this court in *Berlin v. Robbins,* 180 Wash. 176, 38 P. (2d) 1047 (1934).

In the *Berlin* case, J. H. Neely acquired two tracts of land, one of which was imposed with a servitude for the benefit of the other. He mortgaged the dominant estate, and, upon default, the mortgage was foreclosed. Neither the mortgage, the decree of foreclosure, nor the sheriff's deed of conveyance to the purchaser at sheriff's sale mentioned the easement. Later, Mr. Neely sold the servient estate, and, thereafter, the owner of the dominant estate (acquired by mortgage foreclosure against the one having unity of title) instituted an action to quiet title to the easement claimed against the servient estate.

In affirming the decision of the trial court quieting title of the owner of the dominant estate to the easement that was intended for the benefit of the property purchased at the foreclosure sale, this court said:

"The fact that the mortgage through foreclosure of which the mortgagee acquired title to the dominant tenement, contains no mention of the servitude, does not defeat the right of the mortgagee to continue the use of the servitude.

806

" 'Where during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of the severance is in use, and is reasonably necessary for the fair enjoyment of the other, then, upon a severance of such ownership, whether by voluntary alienation *or by judicial proceedings,* there arises by implication of law a grant or reservation of the right to continue such use. . . .' *John Hancock Mutual Life Ins. Co. v. Patterson,* 103 Ind. 582, 2 N.E. 188, 53 Am. Rep. 550." (Italics ours.)

In the instant case, the issue of whether the easements were appurtenant to "Parcel A" and should be included in the decree of foreclosure and subsequent proceedings was properly presented to the trial court by appropriate pleadings. It prevented a multiplicity of suits. The record supports the conclusions of the trial court, and it was not error to judicially establish the easements, as defined in the decree, appurtenant to "Parcel A" across "Parcels B and C."

We fail to find merit in defendants' assignment of error directed to the allowance of costs and attorneys' fees in the trial court.

The judgment and decree of foreclosure, from which this appeal is prosecuted, is affirmed.

Pending appeal, plaintiff filed a motion in the superior court for the determination and allowance of an attorney's fee for its appellate work. The motion was based on provisions of the promissory note and mortgage.

The note provides:

"If this note is placed in the hands of an attorney for collection after any default, I promise to pay a reasonable sum as an attorney's fee, in addition to all costs and expenses of such suit and preparing therefor."

The mortgage provides:

"The mortgagors shall pay the mortgagee a reasonable sum as attorneys fees in any suit which the mortgagee defends or prosecutes to protect the lien hereof or to foreclose this mortgage; . . ."

The trial court denied the motion on the ground that, since an appeal had been perfected, "the court has lost its jurisdiction to hear and consider plaintiff's motion."

Thereafter, plaintiff filed a petition for a writ of mandate, in this court, directing the trial court to determine and allow plaintiff an attorney's fee on appeal. A show cause order was issued, and the matter presented to a Department of this court on a motion day. The Department decided (without opinion) that a decision on the issuance of the writ should be held in abeyance until the appeal was considered on its merits.

■ Whether an attorney's fee shall be allowed for a mortgage foreclosure depends upon the contract between the parties. In *Miesen v. Motter*, 115 Wash. 49, 55, 196 Pac. 659 (1921), this court held that RCW 4.84.020 (then Rem. Code, § 475) does not mean that an attorney's fee shall be allowed in all cases of foreclosure of mortgages, but means that in all cases of foreclosure of mortgages in which attorney's fees *are allowed* the amount shall be fixed by the court. If the contract provides an allowance for attorney's fees, then the court is authorized to fix the amount; but, if the note and mortgage do not provide for such fees, then no attorney's fee can be allowed.

■ By the provisions of the note and mortgage, quoted *supra*, defendants contracted to pay a reasonable sum as attorney's fees in the event it became necessary to foreclose the mortgage. An appeal having been taken, the decree of foreclosure, entered by the trial court, is neither effective nor final until affirmed by this court.

■ When a note and mortgage contain contractual provisions such as we are considering, we believe they indicate that the parties contemplated that the mortgagee would be entitled to the allowance of a reasonable attorney's fee for all legal services required to prosecute the foreclosure to its ultimate conclusion, should foreclosure be necessary. This would include the right to a fee for the defense or prosecution of an appeal to this court. Such a fee is as much a part of the obligation of the contract as any other part. See *Commercial State Bank v. Curtis*, 7 Wn. (2d) 296, 298, 109 P. (2d) 558 (1941).

In *Franklin v. Fischer*, 34 Wn. (2d) 342, 350, 208 P. (2d) 902 (1949), the lease involved in the litigation contained a provision for the allowance of attorney's fees to the successful party for the prosecution or defense of an action for the enforcement of the lease. The court expressed an opinion that the terms of the lease did "not contemplate an attorney's fee in other than the superior court." We believe the case is distinguishable on its facts and not apposite or controlling in the instant case. In addition, the court pointed out:

"Neither side has briefed or argued the question of whether this court can or should make an award of an attorney's fee for services on an appeal under such a contract provision."

However, it does not follow necessarily that the writ of mandate should issue. Assuming, *arguendo*, that the superior court had jurisdiction to consider the motion for the allowance of attorney's fees on appeal (a question we do not decide), we cannot say that the trial court erred when it denied the motion. *At that time,* the appeal had not been completed nor had the ultimate question of foreclosure been resolved. Had we held on appeal that plaintiff's foreclosure action was without merit, an entirely different situation would exist. Therefore, we believe that plaintiff's motion for the allowance of attorney's fee on appeal was premature, and the petition for a writ of mandamus is denied. However, in view of what we have said, plaintiff's motion for an allowance of attorney's fee on appeal should now be considered by the trial court.

In summary, we affirm the decree from which the appeal is prosecuted; we deny the petition for writ of mandamus; we remand the case to the trial court for its determination of a reasonable attorney's fee to be allowed plaintiff on this appeal.

It is so ordered.

HILL, C. J., MALLERY, FINLEY, and OTT, JJ., concur.

---

November 4, 1957. Petitions for rehearing denied.