**MANAGEMENT SERVICES CORP., a Utah Corporation, Plaintiff and Respondent,**

v.

**DEVELOPMENT ASSOCIATES, a Utah Corporation and John and Jane Does One through Eight, Defendants and Appellants.**

**No. 16341.**

Supreme Court of Utah.

Sept. 11, 1980.

---

11. U.C.A., 1953, 77-21-20, 77-21-42.

12. See *State v. Lamorie*, Utah, 610 P.2d 342 (1980).

Steven H. Stewart of Stewart, Young, Paxton & Russell, Salt Lake City, for defendants and appellants.

Kent B. Scott, Salt Lake City, for plaintiff and respondent.

WILKINS, Justice:

Plaintiff brought action to quiet title to real property, and alternatively, for damages caused by breach of contract. On December 7, 1976, plaintiff, as buyer, and Defendant Development Associates (defendant), as seller, entered into a written contract for the purchase and sale of eight designated lots in a subdivision located in Salt Lake County. The District Court of Salt Lake County, sitting without a jury, dismissed plaintiff's quiet title action, but entered judgment in favor of plaintiff for damages in the total amount of $12,747.05, which included attorney's fees and costs. Defendant appeals.

By the contract, plaintiff agreed to purchase, and defendant agreed to sell, lots 309 through 316 of a recorded subdivision in Salt Lake County, at a purchase price of $80,000, of which $800, as earnest money, was paid at the time of the execution of the contract; plaintiff was entitled to immediate possession of the real property; and the remaining $79,200 was to be paid under paragraph 3 of the agreement:

Beginning March 1, 1977, buyer to complete payment on two (2) lots ($19,800.00) and thereafter to close two (2) lots on the first of each month. Total amount to be paid on or before June 15, 1977.

Paragraph 16 of the agreement contains a provision concerning the seller's elections of remedies in the event of default by the buyer, which included the election defendant sought here.

Plaintiff did not make the payment which was due on March 1, 1977. On March 19, 1977, defendant sent plaintiff notice of its election to exercise its option under paragraph 16 A of the agreement, which was to repossess the property and to retain earnest money as liquidated damages unless the delinquent installment was paid within five days. Under date of March 23, 1977, plaintiff responded with a letter in which it demanded that $6,000 of the purchase money for each lot be escrowed to assure construction of improvements on the lots which had not been done.

Defendant did not reply to plaintiff's letter, but beginning March 25, 1977, began to sell the lots to third parties. By April 26, 1977, all eight lots had been sold by defendant at varying prices, which in the aggregate, exceeded the $80,000, agreed upon between these parties.

The District Court found that the contract was severable; that plaintiff had defaulted all of its interest in two lots to be conveyed on March 1, 1977, but that defendant had breached the agreement by wrongfully terminating the contract as to the remaining six lots, and entered judgment on that basis.

The sole issue raised by defendant is the Court's determination that the agreement was severable.

■ A contract is severable or entire depending on the intent of the parties at the time they entered into the contract.

This intent should be ascertained first from the four corners of the instrument itself, second from other contemporaneous writings concerning the same subject matter, and third from the extrinsic parol evidence of the intentions. [*Continental Bank and Trust Company v. Bybee*, 6 Utah 2d 98, 101, 306 P.2d 773 (1957). See also, *Thomas J. Peck & Sons, Inc. v. Lee Rock Products, Inc.*, 30 Utah 2d 187, 515 P.2d 446 (1973)].

■ One factor in determining the parties' intent with regard to severability is the manner in which the consideration is expressed in the contract. Where consideration is a single amount for the whole property, the contract is usually entire, while an apportionment of the consideration to each lot would indicate an intent that the contract be severable. This factor is not conclusive, however. The basic test is whether the purpose of the parties was to buy and sell the whole tract as a unit so that the parties would not have agreed on less than the whole, in which case the contract is entire; otherwise it is severable.[1]

■ Here, the consideration, in the first part of paragraph 3, is expressed as $80,000 for the total tract (of which $800 was paid as earnest money), the language of the subsequent part of this paragraph, noted *ante*, infuses ambiguity into the parties' intent. Plaintiff urges that a reading of this latter part shows that the total purchase price was apportioned by the parties at $10,000 per lot (and the earnest money at $100 per lot).

The District Court determined that the language of the contract was ambiguous on this issue, and admitted parol evidence of the circumstances at the time of signing the contract.

The testimony at trial showed that plaintiff is a corporation organized for the purpose of buying and selling property, and that its president, Edward A. White, is a real estate broker. Plaintiff was purchasing the lots for resale, and as a part of this agreement, though it is not expressed in the written contract, Edward A. White was to be paid 60 percent of the usual 6 percent real estate commission for selling the lots to third parties. Plaintiff was to choose which two of the eight lots would be closed each month.

This evidence, which is not disputed by either party, demonstrates that the parties considered these lots as "fungible," and that their bargain was not that the entire tract, or none of it, should be taken. The District Court therefore had rational basis for concluding that this contract was intended to be severable, and not entire.

■ Plaintiff requests additional attorney's fees for successfully defending this appeal. The written contract provides for payment of reasonable attorney's fees by the defaulting party incurred in enforcing the agreement or in "pursuing any remedy provided hereunder or by the statutes of the State of Utah whether such remedy is pursued by filing a suit or otherwise."

We have previously held that attorney's fees on appeal will be granted in the discretion of the Court,[2] and then only where permitted by statute or rule of Court.[3] While arguing that this Court should exercise its discretionary power in this case, the defendant further urges this Court to modify this rule of law to allow attorney's fees incurred by the prevailing party on appeal where there is a contractual obligation therefor, as a matter of course.

The majority of jurisdictions have recognized that the contractual obligation to pay

---

1. *Boesiger v. DeModena*, 88 Idaho 337, 399 P.2d 635 (1965); *Continental Bank and Trust Company v. Bybee*, supra; *Thomas J. Peck & Sons, Inc.*, supra. See also 17 Am.Jur.2d, Contracts, § 325, and the cases cited therein.

2. *Swain v. Salt Lake Real Estate & Investment Co.*, 3 Utah 2d 121, 279 P.2d 709 (1955).

3. *Downey State Bank v. Major Blakeney Corp.*, Utah, 556 P.2d 1273 (1976).

attorney's fees incurred in enforcing a contract should include those incurred on appeal.[4] The Colorado Appellate Court, in *Zambruk v. Perlmutter Third General Builders, Inc.*, 510 P.2d 472 (Colo.App.1973) stated the most cogent reason for the allowance of such fees on appeal:

> The purpose of a provision for attorney's fees is to indemnify the creditor or the prevailing party against the necessity of paying an attorney's fee and to enable him to recover the full amount of the obligation.

The parties here agreed to pay reasonable attorney's fees if it became necessary to enforce the contract. If plaintiff is required to defend its position on appeal at its own expense plaintiff's rights under the contract are thereby diminished. We therefore adopt the rule of law that a provision for payment of attorney's fees in a contract includes attorney's fees incurred by the prevailing party on appeal as well as at trial, if the action is brought to enforce the contract, and overrule *Swain* and *Downey State Bank* on this point insofar as they may be to the contrary.

The judgment appealed from is affirmed, and this case is remanded to the District Court of Salt Lake County for its determination of reasonable attorney's fees to be granted to plaintiff for the appeal of this case. Costs to plaintiff.

CROCKETT, C. J., and MAUGHAN, J., concur.

HALL, Justice (concurring and dissenting).

I am of the opinion that the contract in the instant case is not uncertain. Its meaning may be construed from its own terms and it was error for the trial court to admit parol evidence on the issue of severability.

It is a basic principle of contract law that:

> ... the meaning and effect to be given a contract depends upon the intent of the parties, and that this is to be ascertained by looking at the entire contract, and all of its parts in their relationship to each other; and this principle applies to whether they intended separate aspects of their contract to be severable, and that *if this results in uncertainty, [then] he may and should look to extraneous evidence* concerning the background and surrounding circumstances in order to make that determination.[1] [Emphasis added.]

Pertinent provisions of the contract here concerned read as follows:

> 2. WITNESSETH: That the Seller, for the consideration herein mentioned agrees to sell and convey to the buyer, and the buyer for the consideration herein mentioned agrees to purchase the following described real property, situate in the county of Salt Lake, State of Utah, ... [m]ore particularly described as follows:

> Lots # 309, # 310, # 311, # 312, # 313, # 314, # 315, # 316 Daybreak Phase III Subdivision as recorded in the Salt Lake County Records Office.

> 3. Said Buyer hereby agrees to enter into possession and pay for said described premises the sum of Eighty Thousand Dollars ($80,000.00) payable at the office of Seller, his assigns or order 307 W. 200 S., SLC, Utah, 84101, *strictly within the following times*, to–wit: Eight Hundred Dollars ($800.00) cash, the receipt of which is hereby acknowledged, and the balance of $79,200.00 shall be paid as follows:

> Beginning March 1, 1977, buyer to complete payment on two (2) lots ($19,800.00) and thereafter to close two (2) lots on the first of each month. *Total amount to be paid on or before June 15, 1977.*

---

4. See, e. g., *Wilson v. Wilson*, 54 Cal.2d 264, 5 Cal.Rptr. 317, 352 P.2d 725 (1960); *Steele v. Vanderslice*, 90 Ariz. 277, 367 P.2d 636 (1961); *Puget Sound Mutual Savings Bank v. Lillions*, 50 Wash.2d 799, 314 P.2d 935 (1957); *Cabot v. First National Bank of Santa Fe*, 81 N.M. 795,

474 P.2d 478 (1970); and *Hollinger v. McMichael*, 594 P.2d 1120 (Mont.1979).

1. *Thomas J. Peck & Sons, Inc. v. Lee Rock Products, Inc.*, 30 Utah 2d 187, 515 P.2d 446 (1973).

Possession of said premises shall be delivered to buyer on the 7th day of December, 1976.

\* \* \* \* \* \*

16. *In the event of a failure to comply with the terms hereof by the Buyer, or upon failure of the Buyer to make any payment or payments when the same shall become due, or within 15 days thereafter, the Seller, at his option shall have the following alternative remedies:*

A. Seller shall have the right, upon failure of the Buyer to remedy the default within five days after written notice, to be released from all obligations in law and in equity to convey said property, and all payments which have been made theretofore on this contract by the Buyer, shall be forfeited to the Seller as liquidated damages for the non–performance of the contract, and the Buyer agrees that the Seller may at his option reenter and take possession of said premises without legal processes as in its first and former estate, together with all improvements and additions made by the Buyer thereon, and the said additions and improvements shall remain with the land and become the property of the Seller, the Buyer becoming at once a tenant at will of the Seller; or

B. The Seller may bring suit and recover judgment for all delinquent installments, including costs and attorneys fees. (The use of this remedy on one or more occasions, shall not prevent the Seller, at his option, from resorting to one of the other remedies hereunder in the event of a subsequent default); or

C. The Seller shall have the right, at his option, and upon written notice to the Buyer, to declare the entire unpaid balance hereunder at once due and payable, and may elect to treat this contract as a note and mortgage, and pass title to the Buyer thereto, and proceed immediately to foreclose the same in accordance with the laws of the State of Utah, and have the property sold and the proceeds applied to the payment of the balance owing, including costs and attorney's fees; and the Seller may have a judgment for any deficiency which may remain. In the case of foreclosure, the Seller hereunder, upon the filing of a complaint, shall be immediately entitled to the appointment of a receiver to take possession of said mortgaged property and collect the rents, issues and profits therefrom and apply the same to the payment of the obligation hereunder, or hold the same pursuant to order of the court; and the Seller, upon entry of judgment of foreclosure, shall be entitled to the possession of the said premises during the period of redemption.

17. It is agreed that time is the essence of this agreement.

\* \* \* \* \* \*

21. The Buyer and Seller each agree that should they default in any of the covenants or agreements contained herein, that the defaulting party shall pay all costs and expenses, including a reasonable attorney's fee, which may arise or accrue from enforcing this agreement, or in obtaining possession of the premises covered hereby, or in pursuing any remedy provided hereunder or by the statutes of the State of Utah whether such remedy is pursued by filing a suit or otherwise. [Emphasis added.]

On March 19, 1977, defendant–seller (Development Services), sent plaintiff–purchaser (Management Services) a "contract forfeiture notice" which reads, in pertinent part, as follows:

TO MANAGEMENT SERVICES CORPORATION, and all claiming by, through and under them:

You and each of you will please hereby take notice that the undersigned DEVELOPMENT ASSOCIATES of Salt Lake City, Utah does hereby give notice that they elect to exercise the option designated in paragraph 16A of a certain Uniform Real Estate Contract dated December 17, 1977, wherein they are named as Seller, and MANAGEMENT SERV-

ICES CORPORATION, is named as Buyer, wherein the terms and conditions with respect to the sale of certain parcels of real property located at 2215 East 9200 South, Sandy, Utah, described hereafter, are particularly set forth.

PROVIDED, however, as required by law, you are extended an option for a term of five days after service of this notice upon you to reinstate said contract by the payment to the undersigned through their attorney, Grant S. Kesler, 307 West 200 South, Salt Lake City, Utah, for the sum of $20,369.10 representing delinquent installment payment for the month of March, 1977, together with the further sum of $100.00 represented to be a reasonable attorney's fee payable in addition to said installments as set forth in paragraph 21 of said agreement.

In the event of your failure to reinstate said contract the Seller intends to exercise the right of repossession and forfeiture as set forth in paragraph 16A. No payments less than herein set forth and no payment to the previously designated collection agents will be acceptable as applicable to said contract.

\*　　\*　　\*　　\*　　\*　　\*

By the very terms of the contract, and contrary to any theory of severability, the buyer took possession of all of the lots on the date the contract was executed, December 7, 1976. The buyer was to make four equal installment payments in the amount of $19,800 on March 1, April 1, May 1, and June 1. The agreement clearly provided for the sale of eight lots, and it is also clear that it was not intended that the buyer be permitted to accept certain lots and reject others. That the purchase of individual lots is not severable from the contract is made further abundantly clear by paragraph 16C which gives the seller the option to sue for the entire unpaid balance of the contract should the buyer fail to make any payment within 15 days of when due. Rather than choosing this remedy, the seller opted to proceed under 16A. When default was not remedied within five days after written notice, the seller was released of all obligations in law and in equity to convey the property.

To hold as does the majority is to effectively emasculate the provision that payments were to be made "strictly within the [named] times" whereby the buyer could effectively "tie up" all of the property (until at least June 15) while consistently defaulting on the monthly payments. The agreement is a contract to purchase property, not a unilateral *option* to purchase.

I believe that the contract can and should be interpreted as a matter of law,[2] and that the trial court erred in admitting parol evidence. Nevertheless, I fail to see how the testimony admitted has any relevance to the issue of severability. As explained in the majority opinion, that testimony was simply to the effect that the buyer was to choose which two of the eight lots would be "closed" each month, and that White was to be paid a real estate commission for selling the lots to third parties. I cannot conclude that such testimony shows the parties' intent to treat the contract as having severable components.

I can accept the majority's analysis of attorney's fees and that they should be recoverable by the prevailing party on appeal where there is a contractual obligation therefor; however, in light of the foregoing analysis, I would reverse and remand the case for a determination of reasonable attorney's fees to be awarded to *defendant.*

STEWART, J., concurs in the opinion of HALL, J.

---

2. A function for which we are just as suited as is the trial court. *Ephraim Theatre Co. v. Hawk,* 7 Utah 2d 163, 371 P.2d 221 (1958).