**NORTH PARK BANK OF COMMERCE, Plaintiff and Respondent,**

v.

**Donald G. NICHOLS and Joseph H. Bottum, Defendants and Appellant.**

**No. 17498.**

Supreme Court of Utah.

March 22, 1982.

C. C. Patterson, Ogden, for Bottum.

Frank M. Wells, Ogden, for Nichols.

Walter G. Mann, Brigham City, for plaintiff and respondent.

HALL, Chief Justice:

Defendant Joseph H. Bottum appeals a judgment holding him jointly liable with defendant Donald G. Nichols for the balance due on a total of three promissory notes signed by Nichols.

Nichols borrowed $40,000 from plaintiff North Park Bank of Commerce on December 15, 1976, executing a promissory note and pledging 130,000 shares of Ametek stock as collateral. As additional security, appellant Bottum signed an agreement promising to personally guarantee payment of the loan. On January 7, 1977, plaintiff loaned Nichols an additional $5,000 without obtaining further security.

Nichols' original promissory note fell due on March 15, 1977, and his $5,000 note fell due on April 7, 1977. However, as of April 21, 1977, Nichols had paid only the interest on these notes. At that time, Nichols signed a new promissory note for the entire $45,000 principal.

Between April and September of 1977, plaintiff sold 93,500 shares of the pledged Ametek stock and applied the proceeds against Nichols' loan. As of September 13, 1977, Nichols still owed $18,762, including an additional $3,000 which plaintiff had loaned him in July of that year. Nichols again signed a promissory note for the amount owing, which fell due November 14, 1977, and remained unpaid on February 2, 1978, at which time plaintiff filed suit.

Bottum argues that although he guaranteed the original $40,000 loan to Nichols, he is not liable for repayment of the later $5,000 and $3,000 loans. Bottum claims that if the $32,575 realized on Nichols' stock had been applied solely against the original $40,000 plus interest, rather than against Nichols' entire debt to plaintiff, Bottum would be liable for only the remainder of the $40,000 plus interest, or approximately $16,000, rather than for Nichols' entire balance of $24,813.[1]

Bottum has not shown that plaintiff had any obligation to apply the proceeds of the Ametek stock against Nichols' debt before proceeding against Bottum. However, even if this were the case, Bottum would be liable for the entire amount now owed by Nichols, having expressly assumed such liability in his guarantee agreement.

In the first sentence of the agreement signed by Bottum, he agreed to "guarantee payment when due of any and all obligations of [Nichols] to [plaintiff] *now existing or which may hereafter arise* of whatsoever nature and however represented . . . ." (Emphasis added.) This promise is repeated in the following language:

> *This agreement is continuing in nature,* it being specifically understood that unless indicated to the contrary at the end hereof, *the agreement is to encompass future accommodations and indebtednesses* of [Nichols] . . . and that any obligations or indebtednesses may be changed, modified, increased, renewed, paid or reinstated, all without notice to [appellant] . . . . [Emphasis added.]

Although Bottum expressly limited his guarantee to $40,000, he added no further language to the agreement to limit his liability with respect to Nichols' future obligations.

In spite of Bottum's clearly expressed promise to guarantee future advances to Nichols, Bottum claims that plaintiff cannot enforce this promise because of this Court's holding in *First Security Bank of Utah v. Shiew*, Utah, 609 P.2d 952 (1980). In that case, this Court declined to enforce a "dragnet" future advances clause in a mortgage agreement to allow First Security Bank to claim the defendants' mortgaged home as security for a later, unrelated business loan. Bottum also relies on *Heath Tecna Corp. v. Zions First National Bank*, Utah, 609 P.2d 1334 (1980).

Neither the *First Security Bank* case nor the *Heath Tecna* case supports Bottum's position. Neither of those cases dealt with a loan guarantee agreement; each involved, rather, the interpretation of standard printed language in a security agreement reciting that the collateral secured all present and future debts.

In the *First Security Bank* case, the two loans in question had been made by bank branches in different cities: the first by its Monticello branch, to pay for the borrowers' home, and the second by its Price branch, to finance a cattle raising venture. Language in the Price loan agreement made no reference to the earlier Monticello mortgage and stipulated: "This agreement constitutes the entire agreement between the parties." Because of the obvious lack of connection between the two loans and the absence of even "a scintilla of evidence [that] the parties intended the second loan to be under the security of the first loan," this Court declined to enforce the standard "dragnet" language in the mortgage agreement against the borrowers.

In the *Heath Tecna* case, Zions First National Bank had seized and sold a Pantera

---

1. Subsequent to judgment in this case, plaintiff sold the remaining 36,500 shares of Ametek stock in its possession and applied the proceeds against Nichols' debt, reducing Nichols' and Bottum's actual liability to $2,913 plus interest, attorney fees and costs.

automobile pledged as security for a promissory note, using the proceeds to satisfy a debt incurred on a subsequent note by a corporation whose president had been a promissor on the first note. The Court reversed a summary judgment in favor of Zions, finding the future advances clause in the initial security agreement to be "ambiguous" and directing the lower court at trial to consider the possible difference in parties between the two loans, as well as the factors discussed in the *First Security Bank* case.

In neither the *First Security Bank* nor the *Heath Tecna* cases did this Court pronounce future advance clauses to be uniformly unenforcible. The focus of the Court's holding in each of those cases was on determining the actual intent of the parties and on preventing the lender from enforcing against the borrower inconspicuous contract language which might have gone unnoticed by the latter at the time of contracting. The Court based its holding in the *First Security Bank* case partly on the fact that "[t]here was no evidence this clause was a subject of negotiation between the parties or that the attention of the mortgagors was directed to this provision." The Court there emphasized the importance of carrying out "the intention of the parties ... based on all the circumstances attending the execution of the mortgage and the nature of the transaction as well as the language of the instrument itself."

In the *Heath Tecna* case, this Court quoted the above formulation from the *First Security Bank* case. The Court then stated:

> This is not to say that the situation may not arise where a future advances clause is so unambiguously drawn that [no] reference to anything other than the language of the clause itself need be made.

The above language applies to the present case. Here, Bottum's agreement was "so unambiguously drawn that [no] reference to anything other than the language of the clause itself need be made." The opening sentence of the agreement clearly specified his obligation to guarantee Nichols' present and future obligations to plaintiff. Reference to this obligation is repeated several times in the agreement. Bottum voluntarily signed the guarantee, adding language to limit the amount but not the nature of the obligations incurred.

In addition, Bottum's own testimony indicates that he was aware of the future advances coverage of the agreement at the time he signed it:

Q: Now, the guarantee agreement, did you read that?

A: Yes, sir, I did.

Q: Didn't that guarantee anything past, present, and future?

A: Yes, sir, it did.

Q: Up to $40,000?

A: Yes, sir, it did.

Thus, even Bottum's own testimony fails to show that the clear guarantee language incorrectly represented the intent of the parties.

In light of the unmistakable and emphatic language of the guarantee and the absence of evidence concerning any contrary intent on the part of the parties, the trial court correctly found Bottum liable on Nichols' entire obligation.[2]

The trial court awarded attorney fees and costs to plaintiff based on an express provision for payment of such fees and costs in Bottum's guarantee agreement. Plaintiff now claims additional attorney fees for the time spent by its attorneys in preparation of this appeal. This Court has recently held in several cases that a contract provision for payment of attorney fees applies to fees incurred on appeal as well as at trial.[3]

We affirm the judgment of the trial court and remand for the determination of a reasonable attorney fee to be awarded to

---

**2.** See *Bank of Ephraim v. Davis*, Utah, 559 P.2d 538, 539 (1977).

**3.** *Bradshaw v. Kershaw*, Utah, 627 P.2d 528 (1981); *Management Services Corp. v. Development Associates*, Utah, 617 P.2d 406 (1980); *Nielsen v. Chin-Hsien Wang*, Utah, 613 P.2d 512 (1980).

plaintiff for the defense of this appeal. Costs to plaintiff.

STEWART, OAKS, HOWE and DURHAM, JJ., concur.