IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| THE COLLECTION GROUP, LLC, a Washington Limited Liability Company, | ) ) ) | No. 32020-1-III |
| Respondent, | ) ) | |
| v. | ) ) | |
| DAVID R. COOK AND JANE DOE COOK, husband and wife, and their marital community composed thereof, | ) ) ) ) | UNPUBLISHED OPINION |
| Appellants. | ) ) | |

SIDDOWAY, C.J. — David Cook appeals the trial court's refusal to set aside a 2006 default judgment entered in a collection action by the Collection Group (TCG), which he claims is void for insufficient service of process. He contends the trial court erred in applying the presumption that a facially correct affidavit of service is valid and refusing to vacate the default judgment based on his evidence that the address listed on the return of service was not his usual place of abode. Because the return of service was sufficient as to the matters it addressed and was supplemented by additional evidence, and because Mr. Cook's own evidence fell short of demonstrating insufficient service of process by even a preponderance of the evidence, we affirm.

PROCEDURAL BACKGROUND

On July 2, 2006, TCG commenced this action against David Cook to collect $5,993.80 he allegedly owed on a credit card account, by delivering two summonses and complaints to an adult at the home located at 1515 S. Lilac Lane in Liberty Lake, Washington—the address listed on Mr. Cook's latest billing statement for the delinquent account.

After Mr. Cook failed to timely respond, TCG moved for an order of default, which the Spokane County District Court entered on August 30, 2006. With prejudgment interest, attorney fees and costs, the judgment entered totaled $10,444.78. TCG thereafter transferred the judgment to the Spokane County Superior Court for collection.

TCG commenced supplemental proceedings against Mr. Cook on June 12, 2009 by serving copies of the pleadings on his "brother/co-resident," Richard Cook, at the Lilac Lane address. Clerk's Papers (CP) at 47. A few days later, one of TCG's lawyers received a call from Ralph Van Camp, who identified himself as a lawyer and put in a verbal notice of appearance on behalf of Mr. Cook. The next day, TCG received a second call from a second lawyer, Dustin Deissner, who again provided a verbal notice of appearance and explained that Mr. Van Camp was his partner. On August 23, 2013— four years after the telephonic appearances and nearly seven years after entry of the default—Mr. Deissner filed a motion on behalf of Mr. Cook to vacate the judgment under CR 60, alleging that it was void for lack of personal service.

A return of service had been filed with the district court on July 10, 2006. It stated that the process server had left two copies of the summons and complaint at the Lilac Lane address with "a white female, who would not give her name, approximately mid to late 40's, 5'2", glasses, above shoulder blond hair, who stated she lived there." CP at 111. In support of his motion to vacate the judgment, Mr. Cook submitted his own declaration and that of Marti Mortensen, who claimed to have personal knowledge as to the occupancy of the Lilac Lane house. Both declarations stated that at the time of service, Mr. Cook's brother was leasing the Lilac Lane house to Timber-Land-Ag, LLC, a limited liability company owned by Ms. Mortensen and her former husband, Vernon Mortensen.

In his declaration, Mr. Cook denied residing at the Lilac Lane house at the time of service. He claimed he was in the process of buying a home in California in June and July 2006, that neither he nor his brother received copies of any legal papers, and that he did not know who the summons and complaint copies were supposedly served upon. Mr. Cook claimed that he first learned of this action when "some papers seeking supplemental proceedings were delivered [to the Lilac Lane address] in August 2012 to my mother who was there cleaning the house so it could be re-rented." CP at 17.

Ms. Mortensen asserted in her declaration that the Timber-Land-Ag LLC that she jointly owned with Mr. Mortensen rented the house from Richard Cook from August 2005 to August 2006, when her divorce from Mr. Mortensen became final. Nonetheless,

3

she stated that during that timeframe she was living full time in Moyie Springs, Idaho. She claimed that she was in northern Idaho preparing for a hearing in the divorce trial on the day the summonses and complaints were allegedly served.

In September 2013, TCG sent a letter to Mr. Deissner requesting that he withdraw the motion to vacate on the grounds that it contained "blatantly false" information, pointing out a number of discrepancies from information TCG had obtained from several sources.[1] CP at 93. Mr. Deissner later filed a declaration conceding that some of the information he and Ms. Mortensen provided about her divorce (in which Mr. Deissner had represented Ms. Mortensen) was mistaken.

The trial court denied Mr. Cook's motion to vacate, concluding that "the affidavit of service is facially valid," even though it did not fill in "every conceivable blank." Report of Proceedings (RP) at 23. Mr. Cook timely appealed, seeking review of the court's order denying his CR 60 motion to vacate the default judgment.

---

[1] We will not elaborate on the discrepancies, a number of which were revealed in Westlaw "CLEAR" investigative reports on Mr. Cook, Ms. Mortensen, and Mr. Mortensen that TCG filed with the court. While the reports contradict Mr. Cook's and Ms. Mortensen's sworn testimony in a number of respects, they are hearsay and TCG has not established their admissibility as market reports or commercial publications "generally used and relied upon by the public or by persons in particular occupations." ER 803(a)(17). We have not relied upon them in our de novo review of the trial court's denial of the CR 60(b)(5) motion.

ANALYSIS

Mr. Cook contends the trial court erred in refusing to vacate the default judgment because he was never properly served with the summons and complaint. "Proper service of the summons and complaint is a prerequisite to the court obtaining jurisdiction over a party, and a judgment entered without such jurisdiction is void." *Woodruff v. Spence*, 76 Wn. App. 207, 209, 883 P.2d 936 (1994); *In re Marriage of Markowski*, 50 Wn. App. 633, 635-36, 749 P.2d 754 (1988). Under CR 60(b)(5), a court "may relieve a party" from a final judgment or order on the grounds that "[t]he judgment is void." A motion to vacate a void judgment under CR 60(b)(5) may be brought at any time after entry of the judgment. *Markowski*, 50 Wn. App. at 635; *Allstate Ins. Co. v. Khani*, 75 Wn. App. 317, 323, 877 P.2d 724 (1994).

Because courts have a mandatory duty to vacate void judgments, we review a trial court's decision to grant or deny a CR 60(b)(5) motion to vacate a default judgment for lack of jurisdiction de novo. *Dobbins v. Mendoza*, 88 Wn. App. 862, 871, 947 P.2d 1229 (1997). Likewise, while "[r]eview of a denial of a CR 60(b) motion is generally limited to the propriety of the denial, and is not a review of the original judgment[, . . .] if questions are raised concerning lack of trial court jurisdiction and fundamental constitutional rights, these issues may be determined on appeal as justice may require." *In re Marriage of Maxfield*, 47 Wn. App. 699, 703, 737 P.2d 671 (1987).

## I. *Standard of proof*

Mr. Cook argues that the trial court applied the wrong standard of proof in deciding the jurisdictional issue. It is well settled that "[a] facially correct return of service is presumed valid and, after judgment is entered, the burden is on the person attacking the service to show by clear and convincing evidence that the service was irregular." *Woodruff v. Spence*, 88 Wn. App. 565, 571, 945 P.2d 745 (1997); *see also, e.g., Vukich v. Anderson*, 97 Wn. App. 684, 687, 985 P.2d 952 (1999); *In re Dependency of A.G.*, 93 Wn. App. 268, 277, 968 P.2d 424 (1998); *Lee v. Western Processing Co.*, 35 Wn. App. 466, 469, 667 P.2d 638 (1983) ("An affidavit of service, regular in form and substance, is presumptively correct.") Mr. Cook argues that the return of service in this case is not entitled to the presumption of validity because it failed to state that the Lilac Lane address was his usual place of abode and it failed to identify the basis for that assertion. Br. of Appellant at 8-9. As a result, he claims that he was required to prove insufficient service by only a preponderance of the evidence. He relies on *John Hancock Mutual Life Insurance Co. v. Gooley*, 196 Wash. 357, 360, 83 P.2d 221 (1938), in which a process server's original affidavit of service was found defective in part because it failed to state that the place of service was the defendants' usual place of abode.

In *Gooley*, the plaintiff commenced an action against Edward and Pauline Gooley (among others). Mr. and Mrs. Gooley had lived for 30 years at their Lincoln County farm but at the time of the lawsuit were temporarily in Spokane, where Mrs. Gooley had

been hospitalized. *Id.* at 359. Rather than await the Gooleys' return to the farm, the process server left a copy of the summons and complaint with the Gooleys' daughter-in-law at the Englehorn hotel in Spokane, where Mr. and Mrs. Gooley temporarily occupied a light housekeeping room after Mrs. Gooley was released from the hospital. *Id.* at 358-60. The affidavit of service stated that the Gooleys were served by leaving the documents with Mrs. August Gooley "at the Englehorn hotel . . . , [the defendants] each being absent therefrom, and the said Mrs. August Gooley being a person of suitable age and discretion then resident therein." *Id.* at 359.

A default judgment was entered, which the Gooleys attacked on the basis of insufficient service of process. They challenged in part the fact that the plaintiff's return of service did not recite that the Englehorn hotel was the Gooleys' house of usual abode. The plaintiff responded by filing an amended affidavit of service in which the process server testified that, at the time of service, the Englehorn hotel "was then the house of usual abode of Mr. and Mrs. Gooley." *Id.* at 360.

The Washington Supreme Court found the original affidavit of service defective. As Mr. Cook argues, this was in part because it failed to state that the Englehorn hotel was the Gooleys' house of usual abode. In that respect, TCG's return of service also fell short of establishing all facts essential to effective substitute service. *Cf.* CR 4(g)(7) (the return must state the manner of service); RCW 4.28.080(15) (authorizing substitute service by "leaving a copy of the summons at the house of [the defendant's] usual abode

7

with some person of suitable age and discretion then resident therein"). But the more pertinent holding of *Gooley* for purposes of this case is that it is proper to permit the filing of an amended return of service "as the actual facts control; and if jurisdiction was actually acquired over the persons of the defendants, that fact should govern." *Id.* at 363. The court added that "[i]t is the fact of service which confers jurisdiction, and not the return, and the latter may be amended to speak the truth." *Id.*

A return of service that fails to include all facts essential to effective service is defective in the sense that it is incomplete. The plaintiff can address any shortcomings by amending the return or by additional evidence. *Williams v. Steamship Mut. Underwriting Ass'n*, 45 Wn.2d 209, 226-27, 273 P.2d 803 (1954) (proper remedy would be to permit amended return of service); *Burdick v. Powell Bros. Truck Lines*, 1 F.R.D. 220 (N.D. Ill., 1940) (return of service could be amended under parallel federal rule).

Modern civil rules make clear that "[f]ailure to make proof of service does not affect the validity of the service." CR 4(g)(7); *Scanlan v. Townsend*, 181 Wn.2d 838, 848, 336 P.3d 1155 (2014). "A 'lack of return of service [neither] deprive[s] a court of jurisdiction, nor does it affect the validity of the service.'" *Id.* (quoting *Jones v. Stebbins*, 122 Wn.2d 471, 482, 860 P.2d 1009 (1993)).

## II. Insufficient proof of improper service

Mr. Cook has not shown by clear and convincing evidence, or even by a preponderance of the evidence, that the Lilac Lane house was not his usual place of

abode. The initial submissions in support of the motion for an order of default demonstrated that the Lilac Lane address had been the address of record for Mr. Cook's credit card account. While Mr. Cook complains that the account address was several years old, TCG demonstrated that before commencing its collection action, it consulted the Spokane County assessor's website to confirm that Mr. Cook and his brother not only owned the Lilac Lane property, but that they listed it as their address. TCG's printout from the assessor's website is dated April 28, 2006, reflecting information as of April 27, 2006. TCG established by declaration and exhibits that it thereafter sent demand letters to Mr. Cook at the Lilac Lane address twice, in May and June 2006, and that neither letter was returned as undeliverable. That serves as some evidence that the address was a usual place of abode for Mr. Cook. *Cf. Automat Co. v. Yakima County*, 6 Wn. App. 991, 995, 497 P.2d 617 (1972) (citing *Avgerinion v. First Guar. Bank*, 142 Wash. 73, 78, 252 P. 535 (1927)) (once there is proof of mailing, it is presumed that the mails proceed in due course and that the letter is received by the person to whom it is addressed).

In response, Mr. Cook provides a declaration stating that he was residing primarily in California and staying temporarily in North Idaho during the time of the service. But he provides no records of property ownership in California or Idaho, no rental agreement for a residence in either state, and no addresses for his ostensible "true" places of abode. "When a party fails to produce relevant evidence within its control, without satisfactory explanation, the inference is that such evidence would be unfavorable to the

nonproducing party." *Lynott v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 123 Wn.2d 678, 689, 871 P.2d 146 (1994) (citing *Pier 67, Inc. v. King County*, 89 Wn.2d 379, 385-86, 573 P.2d 2 (1977)). When a defendant challenging service fails to identify his "true" place of abode, an adverse inference is reasonably drawn. An address would ordinarily be simple to provide and would demonstrate Mr. Cook's confidence that his claim as to his "true" place of abode would withstand investigation by TCG. A bald allegation as to a defendant's true place of abode is unlikely to be sufficient when weighed against a conflicting allegation that is backed by at least some substantiation. *Cf. Gooley*, 196 Wash. at 368 (rejecting process server's unsubstantiated allegation by amended return that hotel was defendants' usual place of abode in light of the conflicting, substantiated allegations of defendants).

Ms. Mortensen's declaration is weak evidence for the same reason. And the factual discrepancies in Ms. Mortensen's and Mr. Cook's declarations that Mr. Deissner was required to concede reflect negatively on both witnesses' credibility. Finally, Mr. Cook's evidence that Mr. Mortensen's secretary made mortgage payments on the Lilac Lane home is neutral, since the record on appeal reveals that Ms. Mortensen was separated from her husband at the time of service and was in the process of divorce. Without more, the payments by the Mortensens' LLC that Mr. Mortensen was causing his secretary to make could have been on Ms. Mortensen's behalf, for housing that she cohabited with its owners.

10

The term "usual abode" is to be liberally construed to effectuate service and uphold jurisdiction of the court. *Sheldon v. Fettig*, 129 Wn.2d 601, 607, 919 P.2d 1209 (1996). "[U]nder certain circumstances a defendant can maintain more than one house of usual abode," *id.* at 611, and "one who asserts a change of residence bears the burden of proof." *Sheldon v. Fettig*, 77 Wn. App. 775, 779, 893 P.2d 1136 (1995).

Mr. Cook failed to demonstrate by even a preponderance of the evidence that the Lilac Lane address was not a usual place of abode for him at the time of service. The trial court did not err in denying his motion to vacate.

### III. Attorney fees

TCG requests its attorney fees on appeal. RAP 18.1 permits recovery of reasonable attorney fees or expenses on review if applicable law grants that right. Washington law generally provides for an award of attorney fees "when authorized by a private agreement, a statute, or a recognized ground of equity." *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 839, 100 P.3d 791 (2004). "A party may be awarded attorney fees based on a contractual fee provision at the trial and appellate level." *Renfro v. Kaur*, 156 Wn. App. 655, 666-67, 235 P.3d 800 (2010).

TCG is the assignee of Citibank, whose card agreement with Mr. Cook includes the following provision regarding collection costs:

> If we refer collection of your account to a lawyer who is not our salaried employee, you will have to pay our attorney's fee plus court costs or any

11

No. 32020-1-III
*Collection Grp. v. Cook*

other fees, to the extent permitted by law. If we sue to collect and you win, we will pay your reasonable legal fees and court costs.

CP at 122. Such provisions are construed as entitling a prevailing party to reasonable attorney fees for all services required to prosecute the action to its "ultimate conclusion." *Puget Sound Mut. Sav. Bank v. Lillions*, 50 Wn.2d 799, 807, 314 P.2d 935 (1957). We award TCG its reasonable fees and costs on appeal subject to its compliance with RAP 18.1(d).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, C.J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, J.